## No. 79SA218

**Alan N. Charnes, Executive Director,
Colorado Department of Revenue v.
Nick DiGiacomo**

(612 P.2d 1117)

Decided June 16, 1980.

96

J. D. MacFarlane, Attorney General, Richard F. Hennessey, Deputy, Mary J. Mullarkey, Solicitor General, Richard H. Forman, Assistant Attorney General, General Legal Services Section, for plaintiff-appellee.

DiGiacomo & Braden, David R. DiGiacomo, for defendant-appellant.

*En Banc.*

JUSTICE DUBOFSKY delivered the opinion of the Court.

The defendant-appellant taxpayer here appeals a trial court order denying his motion to quash a subpoena *duces tecum* issued under section 39-21-112(3), C.R.S. 1973 (*see* p. 11, *infra*).[1] The Court of Appeals transferred the case to us under section 13-4-102, C.R.S. 1973, because the taxpayer challenges the constitutionality of the subpoena statute. We affirm the trial court's order.

---

[1] This is a special statutory proceeding in a district court, and the court has made the final judgment required by the statute. Therefore, the court's rulings are appealable. C.A.R. 1(a)(1).

■ On October 24, 1978, the Attorney General, on behalf of Alan N. Charnes, the director of the Department of Revenue (plaintiff-appellee), filed a motion for a subpoena *duces tecum* in Denver District Court. The motion requested that a subpoena issue to the Citizen's Bank in Westminster because the director believed the bank had custody and control of records necessary for him to investigate the liability of the tax-payer Nick DiGiacomo, appellant here, for Colorado income, sales and withholding taxes. The director filed exhibits with the motion showing that the taxpayer, who had been served with an administrative subpoena, refused to produce the requested records. Section 39-21-112(3), C.R.S. 1973, provides for a judicial subpoena to third parties when the Department of Revenue is unable to obtain information directly from the tax-payer.

When the motion was filed, the Attorney General issued a summons to the bank requesting its presence at a hearing on November 3, 1978, at which time the court would consider issuing the subpoena. The taxpayer filed a motion to intervene in the proceedings to protect his expectation of privacy in the records held by the bank and to challenge the statutory pro-cedures as violative of his Fourth and Fifth Amendment rights. The trial court granted the taxpayer leave to intervene. The bank did not appear at the hearing, and over the taxpayer's objection, the court issued the sub-poena for the bank records. The taxpayer then filed a motion to quash the subpoena. The court denied the motion on December 12. The issuance of the subpoena has been stayed pending this appeal.

Both the taxpayer and the director challenge the trial court's rulings. The taxpayer claims an expectation of privacy in his bank records which are inadequately protected from government access by the judicial sub-poena in section 39-21-112(3), C.R.S. 1973. The statutory shortcomings he alleges are lack of notice to the taxpayer of the motion for a subpoena and no requirement before the subpoena issues that the director show probable cause to believe that the taxpayer has violated the tax laws. He also argues that the judicial subpoena statute compels him to testify against himself in violation of the Fifth Amendment.

On the other hand, the director contends that because the taxpayer has no expectation of privacy in records held by the bank, the taxpayer has neither standing to file a motion to quash nor sufficient interest in the ac-tion to intervene under C.R.C.P. 24.

We agree with the taxpayer that he has an expectation of privacy in his bank records and that the records are protected from unreasonable search and seizure by the Department of Revenue. Therefore, we conclude that the taxpayer here has sufficient interest in the statutory subpoena proceeding to permit him to intervene in the action and to file a motion to quash the subpoena *duces tecum*. We also conclude that the trial court properly denied the taxpayer's motion to quash the subpoena because the

statutory process allowing governmental access to records is reasonable, and the director sufficiently justified the need for the documents in the instant case.

## I. EXPECTATION OF PRIVACY

■ The United States and Colorado constitutions protect an individual's reasonable expectation of privacy from unreasonable governmental intrusion. *See U.S. Const.,* Amend. IV; *Colo. Const.,* Art. II, Sec. 7. The taxpayer here argues that the Department of Revenue's seizure of his records of financial transactions from his bank is a governmental intrusion which violates the constitutional protection for expected privacy.

The taxpayer bases his argument on the Fourth Amendment test in *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), providing protection for "people not places." In determining whether the interest asserted represents a reasonable expectation of privacy, the court looked not to the location of the act but to the expectation of the individual. Thus, in *Katz* although the individual was in a public telephone booth, he expected privacy, and government agents could not record his call without receiving prior judicial approval.

The *Katz* opinion represented a departure from property concepts that had been used to determine the scope of Fourth Amendment protections. The United States Supreme Court has since considered the more flexible "expectation of privacy" analysis in the context of governmental seizure of bank records of an individual's financial transactions in *United States v. Miller,* 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976).[2] However, in *Miller,* the court held that any expectation of privacy which a customer had in his records was forfeited when he disclosed the information to the bank in the course of his bank transactions. Once he revealed information to a third party, the bank, the customer could not limit governmental access to that information.[3] Personal information, which was once kept within an individual's control, now may be readily accessible to the government through financial statements and records of checks tied to social security numbers.

*Miller* limits our application of the Fourth Amendment to the facts before us, but it does not determine the scope of protection provided to individuals in Colorado by the constitution of this state. *Denver v. Nielson,*

---

[2] In *Miller,* a federal grand jury subpoenaed from two banks "all records of accounts, i.e., savings, checking, loan or otherwise," in the name of defendant or his company. The defendant was charged with illegal distilling, and the court refused to suppress the bank records because there was no violation of the defendant's interests protected by the Fourth Amendment.

[3] *Miller* has been the subject of legal criticism, particularly because its reliance on a property analysis ignores the observation in *Katz* that property concepts cannot be "talismanic solutions" to Fourth Amendment problems. Thus, *Miller* fails to recognize the role of banks in our complex society. *See* LaFave, *Search and Seizure: A Treatise on the Fourth Amendment,* §2.7 (1978); Comment, 14 *San Diego L. Rev.* 414 (1977). *Cf.* Note, 83 *Yale L. J.* 1439 (1974).

194 Colo. 407, 572 P.2d 484 (1977). The Colorado constitutional protection from unreasonable searches is similar to the Fourth Amendment:
"The people shall be secure in their persons, papers, homes and effects, from unreasonable searches and seizures; and no warrant to search any place or seize any person or things shall issue without describing the place to be searched, or the person or thing to be seized, as near as may be, nor without probable cause, supported by oath or affirmation reduced to writing." *Colo. Const.*, Art. II, Sec. 7.
The issue for our decision is whether the *Katz* expectation of privacy test as a measure of unreasonable seizures under the Colorado Constitution gives the taxpayer here the right to challenge a subpoena to the bank for his records. We conclude that it does.

■ The *Katz* test has been applied in Colorado courts to reasonably limit governmental searches and seizures. *See, e.g., People v. Weisenberger,* 183 Colo. 353, 516 P.2d 1128 (1973); *Zamora v. People,* 175 Colo. 340, 487 P.2d 1116 (1971); and *People v. Harfmann,* 38 Colo. App. 19, 555 P.2d 187 (1976). Since the decision in *Katz,* several states have considered whether an expectation of privacy under the *Katz* analysis exists in bank records.[4] In *Burrows v. Superior Court of San Bernardino County,* 13 Cal.3d 238, 529 P.2d 590, 118 Cal. Rptr. 166 (1974), the California Supreme Court held that a bank customer has an expectation of privacy in the bank's records of the customer's financial transactions.[5] Noting that bank transactions are not completely voluntary because bank accounts are necessary to modern commercial life, the court found that the inadvertent disclosure of information about the substance of financial transactions was incidental to the customer's major purpose of facilitating fund transfers. Contrary to the rationale in *Miller,* there was not a true disclosure to a third party. Since the customer does not intend to disclose the substance of the financial transaction, the California court found that a bank customer retains a reasonable expectation of privacy in the bank records.[6]

---

[4] *Compare* the recent decisions in *Commonwealth v. DeJohn,* 486 Pa. 32, 403 A.2d 1283 (1979), *cert. denied,* 444 U.S. 1032, 100 S.Ct. 704, 62 L.Ed.2d 668 (1980) (finding an expectation of privacy in bank records) *with Smith v. State,* 283 Md. 156, 389 A.2d 858 (1978) (no expectation of privacy in bank records).

[5] The *Burrows* decision has not been changed since *Miller.* In fact, the principle has been extended to credit cards, *People v. Blair,* 25 Cal.3d 640, 602 P.2d 738, 159 Cal. Rptr. 818 (1979), and telephone records, *People v. Mejia,* 95 Cal.App.3d 828, 157 Cal.Rptr. 233 (1979).

[6] If the reason for the government's interest in the bank account is that the customer has written a "bad check", the bank may reveal the existence and status of the customer's account. *See People v. Johnson,* 53 Cal.App.3d 394, 125 Cal.Rptr. 725 (1976); *State v. McCray,* 15 Wash. App. 810, 551 P.2d 1376 (1976). In these cases, the bank is an active party to the transaction, and the customer loses his expectation of privacy in the account. For similar situations, *see, e.g., A v. District Court,* 191 Colo. 10, 550 P.2d 315 (1976); *Donaldson v. U.S.,* 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1970).

■ The test we adopt to determine the taxpayer's interest in his bank records follows *Katz* and *Burrows*: whether the bank depositor has a reasonable expectation of privacy in the bank records of his financial transactions. We conclude that the taxpayer here does.

■ This analysis does not bar government agents from obtaining bank records. *DeJohn, supra.* Governmental access to the records is limited in that appropriate legal process must be used to obtain them (*see* Part III, *infra*), and the bank customer has standing to assert his expectation of privacy in the records during the legal process (*see* Part II, *infra*).

## II. INTERVENTION AND STANDING

The taxpayer asserted his claim for protection of his bank records from unreasonable governmental intrusion in a motion to intervene in the proceeding for the issuance of the subpoena [section 39-21-112(3), C.R.S. 1973] and in a motion to quash the subpoena to the bank.[7] The director of the Department of Revenue argues that the taxpayer has no expectation of privacy in his bank records and thus no interest to support intervention in the subpoena proceeding and no standing to file the motion to quash.

■ The taxpayer's motion to intervene is based on C.R.C.P. 24(a):[8] "Upon timely application anyone shall be permitted to intervene in an action

. . . . .

"(2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."

Our declaration of an expectation of privacy in bank records satisfies the rule requirement of an "interest relating to the property or transaction which is the subject of the action." The taxpayer's ability to protect that interest may be impaired or impeded if he is not allowed to intervene. Although he could challenge the propriety of the subpoena in tax deficiency or criminal proceedings, by then the privacy of his records has been breached, and the information contained in the records is possessed by the government. Finally, the taxpayer's privacy interest in his bank records cannot be adequately represented when, as here, the bank, the custodian of the records, chose not to appear at the subpoena hearing. The trial court's order allowing the taxpayer's intervention was proper because the taxpayer's expectation of privacy is an interest sufficient to support

---

[7] Although it was not error for the taxpayer to have used both procedures, either by itself would have been sufficient to raise the issue. Section 39-21-112(3), C.R.S. 1973; C.R.C.P. 24, 45(b), 81.

[8] Because we conclude that the taxpayer is entitled to intervention of right under C.R.C.P. 24(a)(2), we do not consider whether he was entitled to permissive intervention under C.R.C.P. 24(b).

intervention of right. C.R.C.P. 24(a)(2).[9]

Once the court allows intervention, it follows that a taxpayer with an expectation of privacy in his bank records has standing to raise the legitimacy of governmental access to the records in a motion to quash the subpoena for the records. C.R.C.P. 45(b). The motion to quash requires the director of the Department of Revenue to justify access to the the taxpayer's bank records under the standards of section 39-21-112(3), C.R.S. 1973, *infra*.

## III. CONSTITUTIONALITY OF THE STATUTE

The taxpayer argues that the statute providing for a judicial subpoena to a third party in a proceeding against a taxpayer is unconstitutional because it does not protect his expectation of privacy in his bank records from unreasonable searches. Particularly, he challenges the statute's lack of a probable cause standard for the issuance of a subpoena and lack of notice to the taxpayer. He questions the propriety of the civil subpoena when the documents may be used for a criminal investigation. He also argues that permitting government access to his bank records violates his Fifth Amendment rights.

We do not agree with the taxpayer's contention that probable cause is required to support an administrative subpoena. In *Oklahoma Press Publishing Company v. Walling,* 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614 (1946), the United States Supreme Court held that an administrative agency's seizure of records is a reasonable seizure if (1) the investigation is for a lawfully authorized purpose; (2) the information sought is relevant to the inquiry; and (3) the subpoena is sufficiently specific to obtain documents which are adequate but not excessive for the inquiry. *See also People ex el. MacFarlane v. American Banco,* 194 Colo. 32, 570 P.2d 825 (1977). Thus, section 39-21-112(3), C.R.S. 1973, allowing the judicial subpoena, and the documents submitted by the Department of Revenue to support the subpoena, must meet the *Walling* standards.

Section 39-21-112(3), C.R.S. 1973, provides:
"If the executive director of the department of revenue is unable to secure from the taxpayer information relating to the correctness of the taxpayer's return or the amount of the income of the taxpayer, the executive director may apply to any judge of the district court of the state of Colorado for the issuance of subpoenas to such other persons as the executive director believes may have knowledge in the premises, and upon making a showing

---

[9] *Compare Donaldson v. United States,* 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971), which held that a taxpayer was not entitled to intervention of right in a proceeding to enforce an administrative summons of the Internal Revenue Service for papers possessed by a former employer of the taxpayer. The court assumed that there was no expectation of privacy in the papers. Subsequently, Congress amended the Internal Revenue Code to allow taxpayer intervention in third party summons. Tax Reform Act of 1976. 26 U.S.C. §7609 (1976).

satisfactory to the court that the taxpayer cannot be found, or evades service of subpoena, or fails or refuses to produce his records or give testimony, or is unable to furnish such records or testimony, the judge has power, after service of summons upon the persons named in the petition of the executive director and after hearing, to cause the issuance of subpoenas under the seal of the court to the persons sought to be so summoned requiring any of them to appear before said executive director and give testimony relating to said taxpayer's return or income. In case any of said persons so served with subpoena fail to respond thereto, the judge may proceed against such persons as in cases of contempt."

The statute clearly meets the *Walling* standard. The director of the Department of Revenue is required by section 39-21-112(1), C.R.S. 1973 (1979 Supp.), to enforce the state tax laws. A subpoena seeking information to enforce the tax laws is a "lawfully authorized purpose." Information relating to the correctness of the taxpayer's return or the amount of the taxpayer's income is "relevant" to enforcement of the tax laws. The statute refers to taxpayer records or testimony; the required specificity is provided by the subpoena.

 The documents supporting the subpoena stated that the Department's investigation was of the Colorado income, withholding and sales tax liability of the taxpayer, a lawfully authorized purpose. The Department's subpoena sought from the bank:

"(1) Copies of all signature cards, statements, canceled checks written on or deposited to any account, deposit slips and debit or credit notices, issued within the period from January 1, 1974 through January 31, 1978 pertaining to all checking accounts, savings accounts or any other bank accounts, as well as all loan agreements, promissory notes, collateral agreements, and any other financial records, maintained in the name of, or reflecting agreements with Nick DiGiacomo.

(2) Copies of all invoices, billing statements, purchase or credit agreements, leases, checks, money orders, promissory notes and any other business or financial records pertaining to Nick DiGiacomo for the period from January 1, 1974 through January 31, 1978."

Because the Department was investigating personal and business tax liability and the subpoena limited the scope of the records by subject and date, the documents sought were relevant and identified specifically enough to meet the *Walling* standards.

 The taxpayer also maintains that the civil subpoena here is improper because the Department of Revenue intends to pursue a criminal action against him and the records sought are for the criminal investigation. This contention has been considered most recently by the United States Supreme Court in *Donaldson v. United States, supra,* and in *United States v. LaSalle National Bank,* 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978). Both cases involved the propriety of Internal

Revenue Service civil subpoenas when the underlying intent was to use the subpoenaed documents for a criminal investigation. As the court noted, civil and criminal aspects of tax investigation overlap. The investigation may result in criminal prosecution[10] and assessment of a civil penalty. Tax investigations by the Department of Revenue also may result in criminal or civil sanctions.[11] Based on *LaSalle*, the use of a civil subpoena in the department's tax investigation was proper.

The taxpayer also questions the statute's lack of a notice provision to inform the taxpayer of the third party subpoena. Here, the taxpayer actually had notice of the subpoena proceeding, so we do not reach this issue.[12]

■ Finally, the taxpayer challenges the statutory subpoena process as compelling him to be a witness against himself in violation of the Fifth Amendment. The premise of his argument is that a court issued subpoena to the bank for the records of his financial transactions in effect compels the production of his personal papers. We disagree. The compulsion is on the bank, not on the taxpayer directly. *Fisher v. United States,* 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976); *Andresen v. Maryland,* 427 U.S. 463, 96 S.Ct. 2697, 49 L.Ed.2d 627 (1976).

The statute and the subpoena documents submitted to the trial court meet the minimum requirement for the Department of Revenue to obtain the records of a taxpayer. Neither the statute on its face nor the application of the statute in these circumstances violates in an unreasonable manner the taxpayer's expectation of privacy in his bank records.

## IV. CONCLUSION

An individual has an expectation of privacy in records of his financial transactions held by a bank in Colorado. This expectation of privacy will prevent unreasonable governmental access to the records, but the access sought by the Department of Revenue in this case is reasonable. Both the statute and the showing made by the Department of Revenue adequately protect the taxpayer's expectation of privacy.

Judgment affirmed.

■

---

[10] The court separated the criminal and civil investigations when the Internal Revenue Service recommended the case to the Justice Department for prosecution. The briefs here indicate that the instant case was recommended to the appropriate district attorney for prosecution but the district attorney refused to prosecute.

[11] *Cf.* sections 39-22-621, 39-26-115, 120, 121, C.R.S. 1973 (and 1979 Supp.).

[12] To protect the taxpayer's expectation of privacy in bank records, the taxpayer should have notice of judicial subpoena proceedings under section 39-21-112(3), C.R.S. 1973.