**The PEOPLE of the State of Colorado,
Plaintiff-Appellant,**

v.

**Robert LAMB, Defendant-Appellee.**

No. 86SA286.

Supreme Court of Colorado,
En Banc.

Feb. 23, 1987.

David J. Thomas, Dist. Atty., E. Ronald Beeks, Deputy Dist. Atty., Golden, for plaintiff-appellant.

Robert Lamb, pro se.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., David L. Saine, Asst. Atty. Gen., Denver, for amicus curiae Colorado Atty. Gen. on behalf of plaintiff-appellant.

LOHR, Justice.

The People bring this interlocutory appeal to challenge an order of the Jefferson County District Court suppressing certain bank records that were subpoenaed by the Colorado Commissioner of Securities pursuant to his authority under section 11–51–119(2), 4 C.R.S. (1986 Supp.). The order of suppression was entered in a criminal prosecution of defendant Robert Lamb for violations of the Colorado Securities Act, §§ 11–51–101 to –129, 4 C.R.S. (1973 & 1986 Supp.). The trial court found that the Commissioner's failure to give notice to Lamb that discovery of the bank records was being sought by the issuance of six administrative subpoenas violated Lamb's due process rights under the Colorado Constitution. The court concluded that suppression of the records was the proper remedy. We reverse the trial court's suppression order, and hold that although the defendant was entitled to notice, suppression is not required under the circumstances of this case. Central to this holding is our conclusion that failure to give notice did not prejudice the defendant.

### I.

On November 15, 1983, Lawrence B. Williams (Williams), an investigator with the State of Colorado, Division of Securities, began an investigation of certain transactions involving the defendant and two of his corporations, Lamb & Associates, Inc. (Lamb & Associates) and The Apex Group, Inc. (Apex).[1] The investigation was precipitated by complaints from persons who had provided money to the defendant for investment with the corpora-

1. The investigation centered on Lamb and the corporation Lamb & Associates. The evidence concerning the role of Apex in the activities under investigation is sketchy at best. The trial court found that the relationship of Apex to the securities fraud investigation was unclear. The record also leaves undefined the precise nature of the alleged misconduct that resulted in the criminal charges against Lamb.

tions. Through information obtained from individual investors, Williams was able to ascertain the location of various corporate bank accounts into which investors' funds had been deposited by Lamb. At Williams' request, the Commissioner of Securities issued six administrative subpoenas to three banks, Bank of Applewood, Republic National Bank of Englewood and First Bank of West Arvada, requesting production of certain records and documents relating to specified accounts of either Lamb & Associates or Apex. *See* § 11–51–119(2), 4 C.R.S. (1986 Supp.).[2]

Shortly after the first subpoena had been sent to the Bank of Applewood, Williams received an inquiry from the defendant as to why the account at the Bank of Applewood was being investigated. Williams told him that the investigation was prompted by the receipt of information that investors' funds had been deposited in that bank. Lamb made no objection to the discovery of the bank records at that time, and all three financial institutions supplied documents as required by the subpoenas.

The Commissioner of Securities turned the information over to the Jefferson County District Attorney's office and thereafter the defendant was charged in Jefferson County District Court with three counts of securities fraud pursuant to section 11–51–124, 4 C.R.S. (1973 & 1986 Supp.).

The defendant moved to suppress the information that had been obtained from the bank records pursuant to the administrative subpoenas. After a hearing, the trial court granted the defendant's motion to suppress, finding that no notice had been given to the defendant before the Commissioner of Securities obtained the records and concluding that such lack of notice violated Lamb's due process rights guaranteed under the Colorado Constitution. The court also found that the defendant had standing to assert a privacy interest in the bank records of Lamb & Associates, and that the subpoenas were facially valid and in compliance with constitutional standards. The court made no finding as to the defendant's standing to challenge the subpoenas relating to the bank records of Apex, but the court's suppression order included the subpoenaed bank records of that corporation as well as those of Lamb & Associates.

The People filed an interlocutory appeal pursuant to section 16–12–102(2), 8A C.R.S. (1986), and C.A.R. 4.1, contending that the defendant lacks standing to complain of the disclosure of information relating to the corporations' accounts, that notice is not required by the Colorado Constitution, and that in any event, suppression is not the proper remedy for lack of prior notice because the subpoenas were issued in full compliance with legal standards. We address the issues in that sequence.

## II.

The People argue that the defendant lacks standing to challenge the Commissioner's failure to give notice of the issuance of the administrative subpoenas because the records sought were corporate records of Lamb & Associates and Apex, not the individual records of the defendant.[3] The proper inquiry to employ in or-

---

2. § 11–51–119(2), 4 C.R.S. (1986 Supp.), provides as follows:

(2) For the purpose of any investigation or proceeding under this article, the securities commissioner or any officer designated by him may administer oaths and affirmations, subpoena witnesses, compel their attendance, take evidence, and require the production of any books, papers, correspondence, memoranda, agreements, or other documents or records which the securities commissioner deems relevant or material to the inquiry.

3. The People also assert that the defendant lacks standing to the extent that he relies on the privilege against self incrimination to preclude disclosure. The record contains no indication that the defendant places reliance on that privilege. The People are correct that he could not claim the privilege, for it is well established that since the compulsion to disclose the records pursuant to subpoena is on the banks and not on the defendant, the privilege is not applicable. *Charnes v. DiGiacomo*, 200 Colo. 94, 103, 612

der to resolve this issue is whether the defendant has suffered actual injury to a legally protected or cognizable interest. *Ad Hoc Executive Committee v. Runyan,* 716 P.2d 465, 468 (Colo.1986); *People v. Seven Thirty-Five East Colfax, Inc.,* 697 P.2d 348, 355 (Colo.1985); *Wimberly v. Ettenberg,* 194 Colo. 163, 168, 570 P.2d 535, 539 (1977). Under Colorado constitutional standards a bank depositor has a reasonable expectation of privacy in the bank records of his financial transactions. *Charnes v. DiGiacomo,* 200 Colo. 94, 98–100, 612 P.2d 1117, 1119–21.[4] Therefore, those records are protected against unreasonable searches and seizures under Article II, Section 7, of the Colorado Constitution. *Id.* The People assert, however, that whereas the corporations may have a legally protected interest and therefore may challenge a search of bank records of corporate accounts, the defendant has no such interest. Under the circumstances of this case, we conclude that the defendant does have standing to challenge the constitutional reasonableness of the production of corporate bank account records pursuant to administrative subpoena.

The People concede in their brief that the defendant is the president and sole shareholder of Lamb & Associates. The record shows that Lamb & Associates was used by the defendant as a repository for funds solicited by the defendant from individual investors. These funds were to be placed by the corporation in investments that were calculated to yield a high rate of return, which would benefit the investors. Al-

though the record does not fully develop the manner in which Lamb & Associates was operated, it does not disclose that anyone other than the defendant was engaged in corporate activities. The record indicates that the corporation was simply utilized by the defendant as a vehicle for collecting and reinvesting money solicited by the defendant from individual investors. The Commissioner's investigation of securities law violations was directed at both the defendant and Lamb & Associates. The trial court found that the investigators treated Lamb as if he were the corporation. Under these circumstances, we conclude that the defendant has standing to challenge the constitutional sufficiency of the administrative subpoenas requiring production of the corporate records.[5] *Cf. Benson v. People,* 703 P.2d 1274, 1277 n. 2 (Colo. 1985) (individual who was target of investigation explicitly assumed to have standing to challenge civil investigative demand served on bank with respect to records relating to accounts of corporation relevant to investigation concerning individual's allegedly criminal activities).

### III.

We next consider whether notice must be given to a bank customer before the enforcement of an administrative subpoena requiring the bank to produce records of the customer's financial transactions. We have not been required to rule on this question before, but we gave it some atten-

P.2d 1117, 1124 (1980); *Benson v. People,* 703 P.2d 1274, 1280–81 (Colo.1985).

4. As we recognized in *Charnes v. DiGiacomo,* the United States Supreme Court has held that a bank customer has no legitimate expectation of privacy in that customer's account records for the purpose of protection against unreasonable searches and seizures under the fourth amendment to the United States Constitution. *See United States v. Miller,* 425 U.S. 435, 443, 96 S.Ct. 1619, 1624, 48 L.Ed.2d 71 (1976).

5. The record is poorly developed for the purpose of showing the defendant's relationship to Apex. It does indicate that Apex was utilized by the defendant to collect and reinvest moneys of individual investors solicited by the defendant. For the purpose of this opinion, we assume without deciding that the defendant also has standing to challenge the administrative subpoenas relating to the bank records of Apex.

tion in the cases of *Charnes v. DiGiacomo* and *Benson v. People.*

*Charnes v. DiGiacomo* involved a subpoena duces tecum issued pursuant to court order under a statutorily authorized procedure in connection with a Colorado Department of Revenue investigation of a taxpayer for liability for Colorado income, sales and withholding taxes. *See* § 39–21–112(3), 16B C.R.S. (1982). Because the taxpayer had actual notice of the judicial proceeding in which the subpoena was issued, we did not address the contention that the statute was defective as a result of the lack of a notice provision to inform the taxpayer of the third party subpoena. *Charnes,* 200 Colo. at 103, 612 P.2d at 1123. We simply noted that "[t]o protect the taxpayer's expectation of privacy in bank records, the taxpayer should have notice of judicial subpoena proceedings under § 39–21–112(3), C.R.S. 1973." *Id.* 200 Colo. at 103 n. 12, 612 P.2d at 1123 n. 12.

We next considered the notice issue in the context of a civil investigative demand by the Jefferson County District Attorney's office for the production of bank documents pursuant to section 18–17–107(1) of the Colorado Organized Crime Control Act. *Benson v. People,* 703 P.2d 1274 (Colo.1985). *See also* §§ 18–17–101 to –109, 8B C.R.S. (1986). As in *Charnes,* the statute involved in *Benson* contained no requirement that notice be given to the bank customer whose records were being sought or to the target of the investigation. *See* § 18–17–107, 8B C.R.S. (1986). The bank customer defendant in *Benson* had received actual notice of the demand served on his bank for the production of his account records and the records of a named corporation, and therefore had no standing to raise the notice issue. *Benson,* 703 P.2d at 1280. Nevertheless, we noted that bank customers are entitled to notice when a demand to produce their bank records has been served on the bank, be it through administrative subpoena or civil investiga-

tive demand, so as to protect the expectation of privacy they possess in their bank records. *Id.* at 1280 n. 7.

The People contend that the footnotes concerning notice in *Charnes* and *Benson* are dicta and therefore not binding. The People argue that these statements should be reconsidered now that the issue is squarely before us. Although we agree that the footnotes were not necessary to the decisions in those two cases, we believe that they correctly state the law.

 *Charnes* establishes that under the Colorado Constitution a bank customer has a reasonable expectation of privacy in the bank's records of the customer's financial transactions. As a result, those records are protected by the Colorado Constitution against unreasonable searches and seizures. The core value to which constitutional protection is extended is the customer's privacy interest. In order to give effect to that protection, the customer must have an opportunity to test the constitutional validity of an administrative subpoena before it is executed. The availability of a hearing subsequent to production and disclosure of bank records is inadequate because once the privacy interest has been violated there is no effective way to restore it. Suppression of the evidence is simply a remedy calculated to discourage violations of the privacy interest by rendering the fruits of unconstitutional searches unavailable as evidence. *See, e.g., United States v. Calandra,* 414 U.S. 338, 347–52, 94 S.Ct. 613, 619–22, 38 L.Ed.2d 561 (1974); *Alderman v. United States,* 394 U.S. 165, 171, 89 S.Ct. 961, 965, 22 L.Ed.2d 176 (1969); *People v. Hamilton,* 666 P.2d 152, 156 (Colo.1983). The remedy cannot and does not restore the privacy of the disclosed information. *Linkletter v. Walker,* 381 U.S. 618, 636–37, 85 S.Ct. 1731, 1741, 14 L.Ed.2d 601 (1965). For these reasons, we adhere to our statements in *Charnes* and *Benson* that to protect a bank customer's expectation of privacy in bank records,

that person must have notice of judicial or administrative subpoenas prior to their execution. We believe that the trial court accurately characterized this requirement as stemming from the right to procedural due process of law guaranteed by the Colorado Constitution. *See* Colo. Const. art. II, § 25.

The People argue, however, that in determining what is necessary to accord a bank customer due process of law under these circumstances, the substantial interests of the government in investigating violations of the securities laws must be taken into account. When this is done, the People contend, it will be seen that due process does not require advance notice to a bank customer that disclosure of records of the customer's bank records is sought. We disagree.

When considering the requirements of due process, a two step analysis is appropriate. "The first consideration relates to the nature of the interest involved and the second to the character of the process." *People v. Chavez*, 629 P.2d 1040, 1045 (Colo.1981). Here, the constitutionally protected interest is the interest in privacy of bank records that is protected from intrusion by unreasonable searches and seizures pursuant to Article II, section 7, of the Colorado Constitution. *Charnes v. DiGiacomo*, 200 Colo. at 98, 612 P.2d at 1119–20. It is the second part of the analysis, the character of the process, that is the focus of the People's argument.

Due process is a flexible standard; not all situations requiring procedural safeguards call for the same types of procedure. *E.g., Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972); *Carberry v. Adams County Task Force on Alcoholism*, 672 P.2d 206, 210 (1983); *People v. Chavez*, 629 P.2d at

1046. A balance must be struck in a manner that protects constitutional interests while furthering legitimate governmental objectives. *E.g., Carberry*, 672 P.2d at 210; *Chiappe v. State Personnel Board*, 622 P.2d 527, 532 (1981); *People v. Taylor*, 618 P.2d 1127, 1135 (Colo.1980). In this connection we must consider the weight of the governmental interest in issuance and enforcement of administrative subpoenas without prior notice to the bank customer, the severity of the injury to the customer as a result of the governmental action, and the functional appropriateness of procedures for minimizing the risk of an erroneous decision, together with the probable value of such additional safeguards. *See, e.g., Carberry*, 672 P.2d at 210; *Chiappe*, 622 P.2d at 533.

It must be recognized that the government has an important interest in prompt and thorough investigation of securities law violations in order to protect the investing public. It must also be acknowledged that to require advance notice to a bank customer that an administrative subpoena will be enforced presents potential for delays in the investigative process.[6] On the other hand, as discussed earlier, a bank customer's privacy interest is destroyed by the execution of an administrative subpoena, and a post-execution hearing offers no means of restoring the privacy that has been lost. An opportunity to challenge the constitutional sufficiency of such a subpoena in advance poses a highly effective safeguard against the enforcement of a subpoena that does not pass constitutional muster. Weighing these considerations in the balance, we are persuaded that the process that is due to the customer of a bank whose records are sought by administrative subpoena includes notice in advance of execution of the subpoena. *See Benson v. People*, 703 P.2d at 1280 n. 7; *Charnes*

---

**6.** The notice to bank customers required by our decision today does not entail the heavy burden of notice to all targets of an investigation which

was the subject of discussion in *SEC v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 104 S.Ct. 2720, 81 L.Ed.2d 615 (1984), relied on by the People.

*v. DiGiacomo,* 200 Colo. at 103 n. 12, 612 P.2d at 1123 n. 12.

### IV.

The People argue that even if a bank customer is entitled to notice of an administrative subpoena prior to execution, as we hold today, the records produced without notice in this case pursuant to the administrative subpoenas should not be suppressed because the defendant was not prejudiced by their production.[7] We agree.

■ The trial court determined after a hearing on the defendant's motion to suppress that the administrative subpoenas were issued in full compliance with statutory and constitutional requirements except for notice.[8] The same determination undoubtedly would have resulted had the hearing been conducted in advance of execution of the administrative subpoenas. The requirement of notice had not been definitively established prior to our decision today. It had never been considered in the context of an investigation into violations of the securities laws. Under these circumstances, we conclude that the defendant suffered no prejudice as a result of the absence of notice and that suppression would be an inappropriately severe consequence to impose for the failure to give notice. Accordingly, we conclude that the trial court order suppressing the bank records obtained by the Division of Securi-

ties pursuant to the six administrative subpoenas must be reversed.

Order reversed.

---

7. The People argue that the absence of prejudice to the defendant deprives him of standing to challenge the administrative subpoenas. We do not view this as an issue implicating standing and therefore discuss it separately as bearing on the appropriateness of suppression as a remedy for violation of the notice requirement.

8. In order for an administrative agency's seizure of records to constitute a "reasonable seizure" and be constitutionally proper, the following three requirements must be met: (1) the investigation must be for a lawfully authorized purpose; (2) the information sought must be relevant to the inquiry; and (3) the subpoena must

be sufficiently specific to obtain documents which are adequate but not excessive for the inquiry. *Oklahoma Press Publishing Co. v. Walling,* 327 U.S. 186, 209, 66 S.Ct. 494, 506, 90 L.Ed. 614 (1946); *Charnes v. DiGiacomo,* 200 Colo. 94, 101, 612 P.2d 1117, 1122 (1980); *People ex rel. MacFarlane v. American Banco Corp.,* 194 Colo. 32, 37, 570 P.2d 825, 828 (1977). *See also Pignatiello v. District Court,* 659 P.2d 683, 685 (Colo. 1983) (reasonableness of grand jury subpoena is based in part on relevancy, reasonable particularity and reasonable period of time).