The PEOPLE of the State of
Colorado, Petitioner,

v.

The DISTRICT COURT OF ARAPAHOE
COUNTY and The Honorable Jack F.
Smith, One of The Judges Thereof, Respondents.

No. 94SA394.

Supreme Court of Colorado,
En Banc.

April 24, 1995.

Rehearing Denied May 15, 1995.

Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., John Daniel Dailey, Deputy Atty. Gen., Terrence A. Gillespie, First Asst. Atty. Gen., Victor Reichman, Asst. Atty. Gen., Sp. Prosecutions Unit, Criminal Enforcement Section, Denver, for petitioner.

Montgomery Little & McGrew, P.C., Christopher B. Little, Englewood, for Charles A. Crouch, appearing on behalf of the respondents.

Justice LOHR delivered the Opinion of the Court.

In this original proceeding under C.A.R. 21, the petitioner, the People of the State of Colorado, requested this court to issue a rule requiring the respondent court[1] to show cause why an order that it issued in a criminal prosecution suppressing evidence obtained through civil discovery in a related matter should not be reversed as an abuse of discretion. Having issued the rule to show cause, we now make the rule absolute.

### I.

The People challenge a suppression order entered by the respondent court in a criminal prosecution against Charles A. Crouch for violations of the Colorado Securities Act, §§ 11–51–101 to –908, 4B C.R.S. (1994 Supp.), and the Colorado Commodity Code, §§ 11–53–101 to –211, 4B C.R.S. (1994 Supp.). We derive the pertinent facts from the briefs and supporting materials filed by the parties in this original proceeding.

On November 25, 1991, Philip A. Feigin, the Securities Commissioner for the State of Colorado (Commissioner), filed a civil action against Five Star Energy Corporation (Five Star), Eagle Energy, Inc. (Eagle Energy), and several persons involved in the operations of the corporate defendants, including Charles A. Crouch. In the complaint, the Commissioner identified Crouch as the "President/CEO" of Five Star and alleged that the defendants had sold Oil Purchase Agreements in Colorado to an undetermined number of people. The Commissioner further alleged that the sales of the Oil Purchase Agreements constituted unlawful commodity transactions and that by such sales the defendants had also violated the Colorado Securities Act by offering and selling unregistered securities to the investing public. The Commissioner sought an injunction against all of the defendants restraining them from additional sales of the Oil Purchase Agreements, as well as other legal and equitable relief under the Colorado Securities Act and the Colorado Commodity Code.

On the date the complaint was filed, the Commissioner also filed a Motion for Leave to Take Expedited Discovery, pursuant to C.R.C.P. 30(a), 30(b)(5), 34(b), and 45. As part of the relief requested, the Commissioner sought an order restraining the defendants from destroying, concealing, and dissipating documents used in connection with the allegedly illegal sales, and requested leave to subpoena documents and to depose the defendants immediately to determine the extent of the documents and other evidence connected with the allegedly illegal activities. The district court granted the motion on November 26, 1991.

On receiving the district court's order granting his motion, the Commissioner immediately issued a subpoena duces tecum to Charles Crouch, ordering him to attend and give testimony at a deposition in the civil action on December 2, 1991. The subpoena also ordered Crouch to produce certain documents in his possession that pertained to the operation of Five Star and Eagle Energy and

1. The respondents have been designated as "The District Court of Arapahoe County and the Honorable Jack F. Smith, One of the Judges Thereof." For simplicity, we refer to the respondents jointly as the "respondent court."

to bring them to the deposition. Crouch appeared pursuant to the subpoena, gave testimony in a deposition, and produced the corporate documents requested by the Commissioner. Crouch was not represented by counsel at the deposition and he did not invoke the protections of the Fifth Amendment to the United States Constitution before answering the questions in the deposition.[2]

On January 23, 1992, the district court entered a default judgment and permanent injunction against Five Star and Crouch, jointly and severally.[3] The district court enjoined Crouch from engaging in the security activities enumerated in the order and entered judgment against him for damages, costs and legal fees totalling $106,230.

On May 28, 1993, the People instituted the present criminal action against Crouch by filing a twenty-one count information in the Arapahoe County District Court. In the information, the People alleged numerous violations of the Colorado Commodity Code and the Colorado Securities Act. Subsequent to the filing of the information, Crouch filed several motions, including a motion to suppress the evidence obtained from him during the previous civil action, in which he had been deposed and had produced documents pursuant to the Commissioner's subpoena.

Crouch argued that the evidence obtained in the earlier proceeding could not be used against him in the criminal prosecution because of the provisions of section 11–51–601(4), 4B C.R.S. (1994 Supp.).[4] Crouch maintained that all of the evidence obtained in the prior civil action, including his deposition and the documents produced pursuant to the Commissioner's subpoena, should be suppressed.

The respondent court agreed with Crouch and granted his motion to suppress the evidence. The respondent court reasoned that in the prior action, Crouch "was compelled to produce documents pursuant to an order for expedited discovery," that he was subject to a subpoena duces tecum sought by the Attorney General,[5] and that he was subsequently deposed. Relying on *Nelson v. United States*, 208 F.2d 505 (D.C.Cir.1953), and on section 11–51–601(4), the court determined that the state could not use the documentary evidence or deposition testimony obtained from Crouch under compulsion in a subsequent criminal action involving the same activities and that the evidence must therefore be suppressed. The People sought reversal of the suppression order by a petition under C.A.R. 21, and we issued a rule to show cause why that relief should not be granted.

**2.** Although a transcript of the deposition is not part of the record before us, the petitioner asserts that Crouch stated at the beginning of his deposition that he had not consulted with an attorney because "it wouldn't do any good...." In Crouch's briefs before this court, he did not dispute this factual statement or his failure to invoke the protections of the Fifth Amendment at his deposition.

**3.** The materials before us do not indicate the disposition of the case with respect to the other defendants.

**4.** Section 11–51–601(4), 4B C.R.S. (1994 Supp.), appears in Part 6 of the Colorado Securities Act, which pertains to the enforcement of the Act by the securities commissioner and the civil penalties for violation of the Act. Section 11–51–601 pertains specifically to the investigative and subpoena power granted to the commissioner under the Act, and subsection (4) provides as follows:

No person is excused from attending and testifying or from producing any document or record before the securities commissioner, or in obedience to the subpoena of the securities commissioner or any officer designated by the securities commissioner, or in any proceeding instituted by the securities commissioner on the ground that the testimony or evidence, documentary or otherwise, required of that person may tend to incriminate that person or subject that person to a penalty or forfeiture; but no document, evidence or other information compelled under order of the district court of the city and county of Denver, or any information directly or indirectly derived from such document, evidence, or other information, may be used against an individual so compelled in any criminal case; except that the individual testifying is not exempt from prosecution and punishment for perjury in the first or second degree or contempt committed in testifying.

**5.** The Attorney General was counsel for the Commissioner and issued the subpoena duces tecum. C.R.C.P. 45(e) allows counsel of record to issue subpoenas for attendance and production of documents at a deposition. *See Charnes v. DiGiacomo*, 200 Colo. 94, 612 P.2d 1117 (1980); *see also* C.R.C.P. 45(a), (b).

## II.

Crouch asserts that review under C.A.R. 21 is not appropriate in this case. We first address that issue.

■ An original proceeding pursuant to C.A.R. 21 is not a substitute for an appeal and is limited to an inquiry into whether the trial court exceeded its jurisdiction or abused its discretion. *Hayes v. District Court,* 854 P.2d 1240, 1243 (Colo.1993); *Halliburton v. County Court,* 672 P.2d 1006, 1009 (Colo. 1983). Matters pertaining to pretrial discovery are committed to trial court discretion, and review of discovery orders is normally limited to appeal. *Hayes,* 854 P.2d at 1243; *Harris v. District Court,* 843 P.2d 1316, 1318 (Colo.1993).

■ Crouch argues that the trial court's ruling at issue here is an appealable order or, alternatively, that the People should have filed an interlocutory appeal pursuant to C.A.R. 4.1. We do not agree and find the exercise of original jurisdiction warranted in the circumstances of this case. The trial court's suppression order effectively forecloses further prosecution of the case by the state, for the order suppresses essentially all of the evidence necessary for the state's case. Furthermore, an interlocutory appeal pursuant to C.A.R. 4.1 is not appropriate. C.A.R. 4.1 allows the state to file interlocutory appeals from trial court rulings granting motions to suppress for unconstitutional seizures of property, involuntary confessions or admissions, and improper orders for nontestimonial identifications. *See* Crim.P. 41(e) and (g), Crim.P. 41.1(i) and C.A.R. 4.1. The trial court based its suppression order on section 11–51–601(4) rather than on grounds supporting interlocutory relief under C.A.R. 4.1. Accordingly, we conclude that the exercise of original jurisdiction pursuant to C.A.R. 21 is appropriate.

## III.

We begin our analysis of the propriety of the respondent court's action by first examining the statute in question, section 11–51–601(4), 4B C.R.S. (1994 Supp.). We then

address whether established constitutional principles support the respondent court's suppression order.

## A.

■ In construing statutes, this court's primary task is to ascertain and give effect to the intent of the legislature; to do so, the court must first look to the language of the statute itself. *People v. Wiedemer,* 852 P.2d 424, 428 (Colo.1993); *Colorado State Bd. of Medical Examiners v. Saddoris,* 825 P.2d 39, 42 (Colo.1992); *R.E.N. v. City of Colorado Springs,* 823 P.2d 1359, 1364 (Colo.1992). When the language of the statute is clear so that the legislature's intent can be discerned with reasonable certainty, there is no need to resort to other rules of statutory interpretation. *Wiedemer,* 852 P.2d at 428; *Snyder v. Jefferson County School Dist. R–1,* 842 P.2d 624, 629 (Colo.1992); *R.E.N.,* 823 P.2d at 1364.

■ With these precepts in mind, we now examine the pertinent provisions of the Colorado Securities Act, §§ 11–51–101 to –908, 4B C.R.S. (1994 Supp.) (the Act). Sections 11–51–601 to –606 of the Act empower the securities commissioner to investigate violations of the Act and to enforce its provisions. The Act authorizes the securities commissioner to "administer oaths and affirmations, subpoena witnesses, *compel their attendance,* take evidence, and require the production of any books, papers, correspondence, memoranda, agreements, or other documents or records" deemed relevant to the securities commissioner's inquiry. § 11–51–601(2), 4B C.R.S. (1994 Supp.) (emphasis added). When an individual fails to obey a subpoena, the securities commissioner can apply to the Denver District Court for an order "requiring that person to appear before the securities commissioner ... to produce documentary evidence if so ordered or to give evidence touching the matter under investigation or in question." § 11–51–601(3), 4B C.R.S. (1994 Supp.). Failure to comply with such an order is punishable as a contempt of court. *Id.*

Section 11–51–601(4), directly at issue here,[6] provides that no person will be "ex-

**6.** Section 11–51–601(4) is quoted in full on page 5, n. 4, of this opinion.

cused" from attending and testifying or from producing any document or record subpoenaed by the commissioner "on the ground that the testimony or evidence, documentary or otherwise, required of that person may tend to incriminate that person...." However, section 11–51–601(4) grants immunity from criminal prosecution to an individual who so testifies or produces records *under court order:*

> [N]o document, evidence or other information *compelled under order of the district court* of the *city and county of Denver*, or any information directly or indirectly derived from such document, evidence, or other information, may be used against an individual so compelled in any criminal case....

(Emphasis added).

Our reading of the statute reveals that an individual subpoenaed by the securities commissioner to testify in a matter under investigation is not "compelled" to testify within the meaning of the statute simply by the service of a subpoena. Rather, the statute requires several steps before an individual can be so compelled. First, an individual can be subpoenaed by the securities commissioner and compelled to attend, pursuant to section 11–51–601(2). Once in attendance, an individual can raise a claim of the Fifth Amendment privilege against compulsory self-incrimination and can refuse to testify on any matters that may incriminate that individual in any civil or criminal proceeding. *See* § 11–51–601(3) and (4), 4B C.R.S. (1994 Supp.).

Once a claim of privilege has been asserted, the securities commissioner does not have the statutory power to compel the individual to testify. Rather, the commissioner must apply to the district court for an order requiring that individual to testify and to produce any documentary evidence touching on the matter under investigation. *Id.* Once the district court issues an order compelling testimony or the production of documents pursuant to section 11–51–604(3), any evidence obtained as a result of that order may not be used against the individual so compelled in any criminal case. § 11–51–601(4), 4B C.R.S. (1994 Supp.).

Our construction of section 11–51–601 is based on a straightforward reading of the unambiguous language of that statute and is consistent with an interpretation of section 11–51–601's predecessor statute, section 11–51–119, 4B C.R.S. (1987), set forth by the Colorado Court of Appeals in *Feigin v. Zinn*, 789 P.2d 478 (Colo.App.1990). In *Zinn*, the securities commissioner issued a subpoena duces tecum to the defendant requiring him to appear, give testimony, and produce certain documents. The defendant appeared pursuant to the subpoena but stated that he intended to invoke his privilege against self-incrimination in response to any questions that might be asked of him by the securities commissioner. The defendant also asserted that any questions he answered or documents he produced would be subject to the immunity from criminal prosecution provided in section 11–51–119(5), 4B C.R.S. (1987).[7] The securities commissioner then brought a declaratory judgment action to determine the procedure for obtaining compliance with the subpoena while preserving the defendant's

---

**7.** Section 11–51–119, 4B C.R.S. (1987), provided in pertinent part as follows:

> (4) In case of contumacy by, or refusal to obey a subpoena issued to, any person, the district court of the city and county of Denver, upon application by the securities commissioner, may issue to the person an order requiring him to appear before the securities commissioner, or the officer designated by him, to produce documentary evidence if so ordered or to give evidence touching the matter under investigation or in question. Failure to obey the order of the court may be punished by the court as a contempt of court.
> (5) No person is excused from attending and testifying or from producing any document or record before the securities commissioner, or

> in obedience to the subpoena of the securities commissioner or any officer designated by him, or in any proceeding instituted by the securities commissioner on the ground that the testimony or evidence, documentary or otherwise, required of him may tend to incriminate him or subject him to a penalty or forfeiture; but no individual may be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter, or thing concerning which he is compelled, after claiming his privilege against self-incrimination, to testify or produce evidence, documentary or otherwise; except that the individual testifying is not exempt from prosecution and punishment for perjury in the first or second degree or contempt committed in testifying.

privilege against self-incrimination. The trial court found that the transactional immunity prescribed by section 11–51–119(5) was self-executing upon a witness's expression of intent to claim the privilege against self-incrimination. The court of appeals reversed.

The court of appeals determined that "once [a] witness appears before the commissioner and invokes his privilege against self-incrimination, only the district court can compel his testimony." Zinn, 789 P.2d at 480. The court concluded that "the transactional immunity provided under § 11–51–119(5) is not self-executing upon notification to the commissioner that a witness intends to claim a privilege against self-incrimination. Rather, both a determination of the likelihood of self-incrimination [8] and a court order compelling the revelation of the subpoenaed evidence are prerequisites to a grant of immunity under § 11–51–119(5)." Zinn, 789 P.2d at 480–81.

The language of section 11–51–119(5) and the current version of that statute now under review, section 11–51–601(4), differ somewhat, but the differences do not suggest that the legislature changed the procedures for asserting the privilege against self-incrimination.[9] We are persuaded that the court of appeals' holding in Zinn applies with equal force to section 11–51–601(4) and comports with our interpretation of that statute. Accordingly, to receive the immunity from crim-

inal prosecution as set forth in section 11–51–601(4), an individual subpoenaed to testify or to produce documents before the securities commissioner must first invoke the protections of the Fifth Amendment. Then, the securities commissioner must apply to the district court for an order compelling evidence or other information, pursuant to sections 11–51–601(3) and (4), 4B C.R.S. (1994 Supp.). Only after such an order has been issued does the immunity provided in section 11–51–601(4) apply to the testimony so compelled.

■ In the present case, the respondent court concluded that the trial court's order in the prior civil action granting the Commissioner's motion for leave to take expedited discovery compelled Crouch to testify at his deposition.[10] No reading of the trial court's order, section 11–51–601(4), or the Rules of Civil Procedure pursuant to which the trial court granted that motion would support the respondent court's characterization. The order entered was simply a general order regarding the time at which civil discovery could be commenced; the trial court did not direct Crouch to answer particular questions, nor was it requested to do so. In fact, the order does not even mention Crouch by name or suggest that the trial court was apprised of the questions that would be asked of Crouch at his deposition.

---

8. An assertion of the Fifth Amendment privilege is subject to limited judicial scrutiny to assess whether a response to a particular question presents a real danger of incrimination:

> [B]efore a court can compel a response or punish for contempt in the face of a claim of the privilege, it must be "perfectly clear, from a careful consideration of all the circumstances in the case, that the witness is mistaken, and that the answer[s] cannot possibly have such tendency" to incriminate.

People v. Razatos, 699 P.2d 970, 976 (Colo.1985) (emphasis in the original), (quoting from Hoffman v. United States, 341 U.S. 479, 488, 71 S.Ct. 814, 819, 95 L.Ed. 1118 (1951)); Tipton v. City of Lakewood, 198 Colo. 18, 21, 595 P.2d 689, 691 (1979); Griffin v. Western Realty Sales Corp., 665 P.2d 1031, 1033 (Colo.App.1983). See also Rogers v. United States, 340 U.S. 367, 374, 71 S.Ct. 438, 442, 95 L.Ed. 344 (1951) (trial court must determine, after privilege has been invoked, whether the inquiry would subject the witness to a " 'real danger' of further crimination").

9. A principal difference is the omission from § 11–51–601(4) of the proviso in § 11–51–119(5) that the witness must claim the privilege against self-incrimination in order to obtain transactional immunity. This proviso was replaced by a specific requirement that a court order be the source of the compulsion to produce evidence, thus making explicit what the court of appeals found implicit in the predecessor statute. See Zinn, 789 P.2d at 480.

10. The trial court relied on Nelson v. United States, 208 F.2d 505 (D.C.Cir.1953), in determining that Crouch had been compelled to testify in the prior civil action. In Nelson, the issue presented was whether the government had violated the defendant's Fourth Amendment right to be free from illegal searches and seizures. Because Fourth Amendment issues are not implicated in the present action against Crouch, the Nelson decision is inapplicable.

Additionally, Crouch appeared at his scheduled deposition and produced the corporate documents that had been the subject of the Commissioner's subpoena. Instead of asserting the privilege against self-incrimination, Crouch proceeded to answer all of the questions put to him during the deposition. Although he could have retained counsel to assist him during the deposition and with the investigation being conducted by the Commissioner, Crouch chose not to do so. Given these facts, we conclude that Crouch's testimony was not "compelled" by the trial court within the meaning of the statute and that he was not entitled to the immunity afforded by section 11–51–601(4). Therefore, the respondent court erred in suppressing the evidence obtained during the civil action from use in the criminal prosecution against Crouch for violations of the Colorado Securities Act and the Colorado Commodity Code.

### B.

We next turn to the question of whether the Fifth Amendment to the United States Constitution would provide an independent basis for prohibiting the statements and documents obtained from Crouch during his deposition in the civil matter from being introduced into evidence in the criminal prosecution. More specifically, we must determine whether the state here can be said to have compelled Crouch to incriminate himself with respect to specific admissions he made during his deposition before the Commissioner.

In *People v. Fisher*, 657 P.2d 922, 928 (Colo.1983), we determined that

[t]he constitutional privilege against self-incrimination, *U.S. Const.*Amend. V and XIV; *Colo. Const.* Art. II, Sec. 18, applies whenever the response to a question may "furnish a link in the chain of evidence needed to prosecute," *Hoffman v. United States*, 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118, 1124 (1951), and may be asserted against "official questions put to [an accused] in any ... proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." *Lefkowitz v. Tur-*

*ley,* 414 U.S. 70, 77, 94 S.Ct. 316, 322, 38 L.Ed.2d 274, 281 (1973).

However, the general obligation to appear and answer questions truthfully under a subpoena does not constitute compulsion to testify unless the witness invokes the privilege and shows that he or she faces a realistic threat of self-incrimination. *Minnesota v. Murphy,* 465 U.S. 420, 427, 104 S.Ct. 1136, 1142, 79 L.Ed.2d 409 (1984). "The answers of such a witness to questions put to him are not compelled within the meaning of the Fifth Amendment unless the witness is required to answer over his valid claim of the privilege." *Id.*

It is well settled that in most contexts, the privilege against self-incrimination is not self-executing. *Id.* ("in the ordinary case, if a witness under compulsion to testify makes disclosures instead of claiming the privilege, the government has not 'compelled' him to incriminate himself"); *Garner v. United States,* 424 U.S. 648, 653, 96 S.Ct. 1178, 1181–82, 47 L.Ed.2d 370 (1976) (an individual under compulsion to make disclosures as a witness who revealed information instead of claiming the privilege lost the benefit of the privilege); *United States v. Kordel,* 397 U.S. 1, 7–10, 90 S.Ct. 763, 766–69, 25 L.Ed.2d 1 (1970) (same). Application of this general rule has been found to be inappropriate in certain well-defined situations, specifically, confessions obtained from suspects in police custody,[11] situations where the assertion of the privilege is penalized so as to foreclose a free choice to remain silent, and in certain income tax return cases. *Murphy,* 465 U.S. at 429–440, 104 S.Ct. at 1143–49. However, in "ordinary" contexts, an individual will forfeit the privilege if he or she fails to assert it before making incriminating statements.

This was, in fact, the precise holding in *United States v. Kordel,* 397 U.S. 1, 90 S.Ct. 763, 25 L.Ed.2d 1 (1970). In *Kordel,* the Government submitted interrogatories to a corporation in a civil suit. The defendant, who was also a corporate officer, was then informed that the Government intended to bring a criminal action against the corporation and certain of its officers, including him.

**11.** *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

The corporation filed a motion with the district court seeking to defer answering the interrogatories until after the disposition of the possible criminal proceeding. The district court denied the motion and the defendant proceeded to answer the interrogatories on behalf of the corporation. At no point did the defendant assert his privilege against self-incrimination.

The court in *Kordel* held that the defendant's answers could be admitted in the subsequent criminal prosecution. *Id.* at 7, 9–10, 90 S.Ct. at 766–67, 768–69. The court reasoned that according to established constitutional principles, the defendant had a constitutional right to refuse to answer the interrogatories, that he was free to consult with counsel before responding, and that nothing in the circumstances under which the questions were presented impaired the defendant's ability to appreciate the possible consequences of his action. *Id.* "His failure at any time to assert the constitutional privilege leaves him in no position to complain now that he was compelled to give testimony against himself." *Id.* at 10, 90 S.Ct. at 768.

The facts in *Kordel* are strikingly similar to the facts in the case now before us. Although Crouch was not aware at the time of his deposition that he might be the subject of a criminal prosecution, he nonetheless could have invoked his Fifth Amendment privilege against compulsory self-incrimination.[12] Additionally, the court in *Kordel* did not consider the district court's order denying the defendant's motion to defer answering the interrogatories as compelling those answers, because the defendant had never raised the privilege. Similarly here, we do not consider the trial court's order allowing expedited discovery to constitute compulsion for Crouch to testify at his deposition. We conclude, therefore, that Crouch's failure to assert the privilege before testifying leaves him in no position to complain now that he was compelled to give testimony against himself.

### IV.

We conclude that Crouch was not compelled to give incriminating testimony in the prior civil action and that he was not entitled, either statutorily or constitutionally, to immunity from criminal prosecution. The respondent court thus erred in the criminal proceeding by suppressing the evidence obtained through discovery in the prior civil proceeding. Accordingly, we make absolute the rule to show cause previously issued.

---

**12.** Crouch does not assert that the state brought its civil action solely to obtain evidence for the subsequent criminal prosecution, or that he was coerced into testifying at his deposition.