Kristen BENSON, Harold W. Lowrie and International Entertainment Consultants, Inc., a Colorado corporation, Petitioners-Appellants,

v.

The PEOPLE of the State of Colorado, Respondent-Appellee.

Harold W. LOWRIE, Petitioner-Appellant,

v.

The PEOPLE of the State of Colorado, Respondent-Appellee.

Nos. 83SA134, 83SA124.

Supreme Court of Colorado, En Banc.

June 24, 1985.

Rehearing Denied in 83SA124 Aug. 19, 1985.

Hartley, Obernesser & Olson, Dennis W. Hartley, Colorado Springs, for petitioners-appellants.

Nolan L. Brown, Dist. Atty., Michael B. Tully, Chief Deputy Dist. Atty., Jeffrey Jorgenson, Golden, for respondent-appellee.

ERICKSON, Chief Justice.

In this consolidated appeal, Harold Lowrie and Kristen Benson challenge separate orders of the Jefferson County District Court that denied their respective motions to quash civil investigative demands. The district court found that the demands complied with the requirements of section 18–17–107(2), 8 C.R.S. (1984 Supp.), of the Colorado Organized Crime Control Act[1] and did not violate the appellants' constitutional rights. We reverse the district court's order in *Benson v. People*, 83SA134, and affirm the district court's order in *Lowrie v. People*, 83SA124.

I.

On December 13, 1982, the Jefferson County District Attorney's Office, acting pursuant to the Colorado Organized Crime Control Act, served a civil investigative demand on the First National Bank of Westminster. The demand directed the bank to produce for examination:

> [A]ny and all bank records, including but not limited to monthly statements, financial statements, cancelled checks, money drafts and transfers regarding a business account, # 0137322, Chroma Corporation, from inception to closing. Chroma Corporation dba Aloha Beach and World of Massage, and/or Harold W. Lowrie's personal account.

On the same day, the district attorney's office served a second investigative demand on Kristen Benson, the secretary of Management Security Services Incorporated (MSSI). The demand directed MSSI to produce for the district attorney's inspection:

> [A]ny and all records, documents and papers pertaining to Management Security Services, Inc., including but not limited to bank accounts, accounts receivable, accounts payable, management agreements or contracts and corporate minutes. Any and all records, documents and papers in the possession or control of Management Security Services, Inc., pertaining to any and all business managed by [MSSI], including … bank accounts, accounts payable, accounts receivable, management agreements or contracts, profit and loss statements and corporate minutes.

---

1. The Colorado General Assembly enacted the Colorado Organized Crime Control Act (§§ 18–17–101 to –109, 8 C.R.S. (1984 Supp.)) in 1981. The Act is modeled after the Racketeer Influenced and Corrupt Organizations Act which the United States Congress passed in 1970. *See* 18 U.S.C. § 1961 et seq.

Lowrie and Benson thereafter filed separate motions to quash the demands pursuant to section 18–17–107(8),[2] asserting that the demands did not comply with various statutory requirements. The appellants also alleged that the demands violated their rights under the first, fourth, fifth and fourteenth amendments to the United States Constitution and article II, sections 7 and 25 of the Colorado Constitution. The district court denied both motions to quash in separate proceedings.

## II.

■ The appellants assert that the demands in this case do not state the "nature of the conduct" constituting the alleged racketeering violation as required by section 18–17–107(2)(a).[3] The civil investigative demands served on the bank and MSSI both contained the following advisement:

> You are hereby advised that the Office of the District Attorney, First Judicial District is conducting an investigation into the activities of Harold W. Lowrie with regard to his knowingly receiving profits derived from a pattern of racketeering activity and using or investing a part of the proceeds derived from the investment or use thereof in the acquisition of a title, right, interest or equity in real property or the establishment or operation of an enterprise, as well as knowingly acquiring or maintaining an interest and control of an enterprise or real property by a pattern of racketeering activity and conspiring with others to violate the provisions of the Colorado Organized Crime Control Act, contrary to 1973 C.R.S. § 18–17–104, (1)(a), (2), (4), and involving possible criminal violations as defined in 1973 C.R.S. § 18–17–103, Racketeering Activity, specifically subsections (5)(b)(II) Theft, 1973 C.R.S. 18–4–401; (5)(b)(XIII) Fraud Upon Department of Revenue, 1973 C.R.S. 19–21–118; and (5)(b)(XV) Offense Relating to Taxation, 1973 C.R.S. 39–22–621; and First Degree Forgery, 1973 C.R.S. 18–5–102.

We hold that the above advisement satisfies the requirements of section 18–17–107(2)(a).

■ We reject the appellants' contention that a civil investigative demand must set forth with specificity the precise nature of the conduct under investigation. Such a requirement is overly restrictive and inconsistent with the purposes of the Act.[4] A civil investigative demand enables the district attorney or attorney general to determine whether a racketeering violation has occurred and if civil or criminal proceedings should be commenced. The government is not in a position during this stage of the investigation to state the exact facts that may support a violation until it has been able to review the documents necessary for that determination. To insist upon specificity at this stage of the investigation would defeat the purpose of the civil investigative demand. *See Petition of Gold Bond Stamp Co.,* 221 F.Supp. 391, 397 (D.Minn.1963), *aff'd,* 325 F.2d 1018 (8th Cir.

---

**2.** Section 18–17–107(8) does not state whether the target of an investigation can seek an order challenging a civil investigative demand served on a third party. The statute simply states that the recipient of a civil investigative demand can petition the court to have the demand modified or set aside. However, we assume for purposes of this opinion that Lowrie has standing to challenge the demand served on the bank. Our assumption that Lowrie has standing is consistent with our decision in *Charnes v. DiGiacomo,* 200 Colo. 94, 612 P.2d 1117 (1980), where we held that a bank customer has standing to challenge an administrative subpoena served on a bank to obtain copies of his banking records.

**3.** Section 18–17–107(2)(a) provides:

(2) Each such demand shall:
 (a) State the nature of the conduct constituting the alleged racketeering violation which is under investigation and the provision of law applicable thereto.

**4.** Section 18–17–102 states:

It is the purpose of this [Act] to seek the eradication of organized crime in this state by strengthening the legal tools in the evidence gathering process, by establishing new penal prohibitions and by providing enhanced sanctions and new remedies to deal with those engaged in organized crime.

Section 18–17–108 adds that "[t]o effectuate the intent and purpose of this article, [its] provisions ... shall be liberally construed."

1964).[5] *See also Mobil Oil Corp. v. Killian,* 30 Conn.Sup. 87, 301 A.2d 562 (1973).

We hold that a demand complies with the requirements of section 18–17–107(2)(a) if it adequately notifies the recipient of the pending investigation and states the "general nature" of the conduct being investigated. In our view, the demands served on the bank and MSSI meet this standard and comply with the requirements of section 18–17–107(2)(a).

### III.

The appellants also contend that the civil investigative demand statute violates their rights to be free from unreasonable searches and seizures as guaranteed by the fourth amendment of the United States Constitution and article II, section 7 of the Colorado Constitution. Section 18–17–107(1) provides:

> Whenever the attorney general or the district attorney has reason to believe that any person or enterprise may be in possession, custody, or control of any documentary materials relevant to a racketeering investigation, he may, prior to the institution of a civil or criminal proceeding thereon, issue in writing, and cause to be served upon such person, a civil investigative demand requiring such person to produce such material for examination.

The appellants claim that the statute is constitutionally deficient since it does not require the district attorney to establish probable cause prior to an examination of bank records. We find the appellants' argument unpersuasive.

■ Although the appellants do have a reasonable expectation of privacy in their bank records and the other documents requested, *Charnes v. DiGiacomo,* 200 Colo. 94, 612 P.2d 1117 (1980), government access to these materials is limited only in that the appropriate legal process must be used to obtain them. *Id.* at 100, 612 P.2d at 1121. We held in *Charnes* that an administrative subpoena of bank records is reasonable without probable cause if (1) the investigation is for a lawfully authorized purpose; (2) the information sought is relevant to the inquiry; and (3) the subpoena is sufficiently specific to obtain documents which are adequate but not excessive for the inquiry. *Id.* at 101, 612 P.2d at 1122 (relying on *Oklahoma Press Publishing Co. v. Walling,* 327 U.S. 186, 208–09, 66 S.Ct. 494, 505–506, 90 L.Ed. 614 (1946)). *See also People ex rel. MacFarlane v. American Banco Corp.,* 194 Colo. 32, 570 P.2d 825 (1977).

■ In addition to the above protections, the Act itself contains specific provisions that safeguard against unreasonable searches and seizures. Section 18–17–107(3)(a) states that the civil investigative demand shall not "[c]ontain any requirement which would be held to be unreasonable if contained in a subpoena duces tecum issued by a court in aid of a grand jury investigation of such alleged racketeering violation." We held in *Pignatiello v. District Court,* 659 P.2d 683, 685 (Colo. 1983), that the standards for a reasonable grand jury subpoena are "substantially similar" to the standards for administrative subpoenas. The court must determine (1) whether the subpoena commanded the production of documents for a lawfully authorized purpose; (2) whether the information is relevant to the investigation undertaken by the grand jury; and (3) whether the request is sufficiently specific and spans a reasonable period of time.

### A.

■ The demand served on the First National Bank of Westminster satisfies the

---

**5.** The General Assembly patterned section 18–17–107(2)(a) after a similar provision in the Antitrust Civil Process Act. *See* 15 U.S.C. § 1312(b)(1). In interpreting the civil investigative demand provisions of the federal antitrust act, the court in *Gold Bond* stated:

> Necessarily, therefore, the nature of the conduct must be stated in general terms. To insist upon too much specificity with regard to the requirements of this section would defeat the purpose of the Act, and an overly strict interpretation of this section would only breed litigation and encourage everyone investigated to challenge the sufficiency of the notice.

221 F.Supp. at 397.

above standards. The district attorney served the demand on the bank pursuant to an investigation of alleged racketeering activities of Harold Lowrie. Section 18–17–107(1) gives the district attorney express authority to issue a civil investigative demand when there is "reason to believe" that a person possesses documents that are relevant to a racketeering investigation. Lowrie has not shown that the demand was served on the bank for harassment purposes or for reasons other than those expressly authorized by the statute. *See, e.g., People v. Corr,* 682 P.2d 20 (Colo.), *cert. denied,* —— U.S. ——, 105 S.Ct. 181, 83 L.Ed.2d 115 (1984); *Gher v. District Court,* 183 Colo. 316, 516 P.2d 643 (1973). We therefore conclude that the demand satisfies the first requirement that it be for a "lawfully authorized purpose."

■ Although the demand served on the First National Bank of Westminster does not establish any connection between Chroma Corporation and the investigation in question, an affidavit filed by the district attorney and sealed by the court cures this defect. The relevancy requirement is met if the government makes a prima facie showing that the requested documents bear some general relationship to the subject matter of the investigation. *People ex rel. MacFarlane v. American Banco Corp.,* 194 Colo. 32, 39, 570 P.2d 825, 830 (1977). *See also Pignatiello v. District Court,* 659 P.2d 683, 685 (Colo.1983); *In re Grand Jury Subpoenas Duces Tecum Addressed to Certain Executive Officers of M.G. Allen & Associates, Inc.,* 391 F.Supp. 991, 995 (D.R.I.1975). A trial court is not bound by traditional concepts of evidentiary relevance in determining whether requested documents are relevant to an investigation. *See* W. LaFave *Search & Seizure,* § 4.13(c). Moreover, the relevancy of the requested documents need not appear on the face of the demand, but can be established through the use of a sworn affidavit. *Cf. United States v. Grand*

*Jury Investigation,* 417 F.Supp. 389 (E.D. Pa.1976).

In this case, the affidavit filed by the district attorney not only states the reasons for the investigation, it also establishes a sufficient nexus between the investigation of Lowrie and the corporations named in the demand. In light of the facts set forth in the affidavit, we conclude that the bank records of Chroma Corporation and Harold Lowrie are relevant to the investigation. We have held that bank records are relevant to an investigation into fraud upon the Department of Revenue and offenses relating to taxation. *See, e.g., Charnes v. DiGiacomo,* 200 Colo. 94, 612 P.2d 1117 (1980). Bank records may also contain evidence that an individual has invested the proceeds of racketeering activities into "the establishment or operation" of another business or enterprise. *See* § 18–17–104(1)(a). We therefore hold that a relationship exists between the documents that must be produced and the purposes of the inquiry.

In our view the demand served on the bank is also sufficiently specific and is not overbroad in scope. The demand contains a sufficient description of the requested documents so that the bank can in good faith determine which documents it must produce. *See People ex rel. MacFarlane v. American Banco Corp.,* 194 Colo. at 39, 570 P.2d at 830. In addition, Lowrie has made no objection that the demand requests documents that cover an "unreasonable period of time." [6] While the demand requests numerous financial documents, we do not believe compliance with the demand would be "unduly burdensome or oppressive." Crim.P. 17(c).

### B.

■ Although the demand served on the bank complies with the constitutional requirements of relevancy and specificity, the demand served on MSSI does not. The record contains insufficient evidence to

---

**6.** Section 18–17–107(8) requires a person challenging a civil investigation demand to "specify each ground" of error. Lowerie's failure to

object to the time span of the demand precludes us from addressing that issue.

support the district court's determination that the records and documents of MSSI are relevant to the racketeering investigation. The prosecution has presented no evidence, either by affidavit or otherwise, that establishes a relationship between MSSI and the purposes of the investigation. Absent some showing of relevance, the demand served on MSSI cannot be sustained. As Justice Holmes stated:

> It is contrary to the first principles of justice to allow a search through all the respondent's records, relevant or irrelevant, in the hope that something might turn up.... Some ground must be shown for supposing that the documents called for do contain [evidence] ... and the ground and the demand must be reasonable.

*Federal Trade Commission v. American Tobacco Co.*, 264 U.S. 298, 306, 44 S.Ct. 336, 337, 68 L.Ed. 696 (1924). The prosecution has not shown "reasonable grounds" for believing that the documents of MSSI are relevant to its inquiry.

The district court's order denying Benson's motion to quash is therefore reversed.

### IV.

The appellants also assert that the civil investigative demand statute violates their rights to due process of law. We do not agree.

■ In our view, the procedural protections afforded persons served with a civil investigative demand are as complete as those afforded persons served with a grand jury subpoena. Section 18–17–107(8) allows a person served with a civil investigative demand to request a court order modifying or setting aside any demand that does not comply with statutory or constitu-

tional requirements. In addition, section 18–17–107(7) requires judicial approval before compulsory compliance with a demand can be obtained. The court therefore stands as "the protective barrier between the naked demand ... to produce and an enforceable court order." *People ex rel. MacFarlane v. American Banco Corp.*, 194 Colo. at 38, 570 P.2d at 829. In light of these statutory protections, we conclude that the appellants' due process rights have not been violated.

■ The appellants also challenge the statute's lack of a notice provision to inform the target of an investigation when a demand has been served on a third party. However, since the appellants in this case actually received notice that the demands had been served on the bank and MSSI, they have no standing to raise the notice issue. *See Charnes v. DiGiacomo*, 200 Colo. at 102, 612 P.2d at 1123. *See also People v. Brown*, 632 P.2d 1025, 1026 (Colo.1981) (litigant has standing to challenge the constitutionality of a statute only when he is actually affected by the alleged constitutional defect).[7]

### V.

■ Finally, appellants argue that the civil investigative demands violate their rights to be free from self-incrimination as guaranteed by the fifth amendment. We disagree. We have held that the fifth amendment privilege against self-incrimination does not apply to corporations and other business entities. *See Losavio v. Robb*, 195 Colo. 533, 579 P.2d 1152 (1978); *A. v. District Court*, 191 Colo. 10, 550 P.2d 315 (1976), *cert. denied*, 429 U.S. 1040, 97 S.Ct. 737, 50 L.Ed.2d 751 (1977). Thus, the demand served on MSSI does not implicate any fifth amendment right. As to the de-

7. We noted in *Charnes,* however, that an individual should receive notice when an administrative subpoena has been served on his bank demanding production of his financial records and documents. 200 Colo. at 103, 612 P.2d at 1123, n. 12. In our view, the same rationale applies to a civil investigative demand served on a bank pursuant to the Colorado Organized Crime Control Act. Bank customers are enti-

tled to notice when a demand has been served to protect the expectation of privacy they enjoy in their bank records. For an excellent discussion of the problems associated with a subpoena of bank records, see Nachman, *Balancing the Government's Investigative Powers and the Citizen's Privacy Rights,* 14 Colo.Law. 947 (June 1985).

mand served on the bank, we have held that the compulsion in such a case is on the bank, and not the individual involved. *Charnes v. DiGiacomo*, 200 Colo. at 103, 612 P.2d at 1124. *See also Andresen v. Maryland*, 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976); *Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976). We therefore conclude that the fifth amendment does not preclude the production of the documents in the present case.

We have examined the appellants' remaining contentions and conclude that they are without merit.

The district court's order in *Benson v. People* (83SA134) is reversed and remanded to the district court with directions that the civil investigative demand served on MSSI be quashed. The district court's order in *Lowrie v. People* (83SA124) is affirmed.