**In the Matter of the REQUESTS FOR INVESTIGATION OF ATTORNEY E.**

No. 01SA404.

Supreme Court of Colorado, En Banc.

Oct. 14, 2003.

Arnold & Porter, Alfred T. McDonnell, Denver, Colorado, Attorneys for Petitioner Attorney E.

John Gleason, Attorney Regulation Counsel, James S. Sudler, Assistant Regulation Counsel, Denver, Colorado, Attorneys for Petitioner Attorney Regulation Counsel.

Ken Salazar, Attorney General, Friedrick C. Haines, Assistant Attorney General, Litigation Section, Denver, Colorado, Attorneys for Respondents Third–Party Movants for Protective Order.

Justice KOURLIS delivered the Opinion of the Court.

## I. Introduction

In this original proceeding [1] we construe our rules governing the investigative phase of our attorney regulation system. We hold that the attorney, who is the target of the investigation, is a "party" to the investigative proceedings. Because our rules governing discovery by the Attorney Regulation Counsel incorporate certain provisions of the rules of civil procedure, Attorney Regulation Counsel must provide the target attorney with notice of the subpoenas and copies of the subpoenaed documents. In addition, we affirm the Presiding Disciplinary Judge's protective order directing that documents subpoenaed from the FBI by Attorney Regulation Counsel be treated as confidential. We hold that this protective order does not violate the targeted attorney's First Amendment rights. However, on remand we direct the Presiding Disciplinary Judge to modify the terms of the protective order to permit both parties to this disciplinary proceeding, Attorney Regulation Counsel and the targeted attorney, to use the documents to further their respective cases provided neither discloses the existence of the documents themselves nor informs any witnesses that the information came from the confidential FBI documents. However, if either party finds it necessary and essential to their respective cases to disclose to witnesses that certain information comes from the confidential documents, they may apply to the Presiding Disciplinary Judge for a modification of the protective order to permit such disclosure.

Attorney Regulation Counsel ("ARC") was investigating allegations of misconduct regarding the target attorney, "Attorney E." [2]

---

1. Justice Bender authored the opinion first announced in this case. The court withdrew that opinion sua sponte. The court then transmitted copies of proposed changes in the opinion to the parties for comment and has taken those comments into account. After the proposed modifications were sent out, Justice Bender recused himself from the case based upon an inadvertent ex parte contact. Justice Kourlis now issues the opinion.

2. These proceedings and the attorney under investigation remain confidential under our disciplinary rules. See C.R.C.P. 251.31.

During the investigation, ARC subpoenaed FBI documents. As mandated by the disciplinary and discovery rules of civil procedure, ARC provided copies of those documents to Attorney E as the party to the investigative proceedings. When Attorney E publicly disclosed the documents and implicated privacy interests of third parties named in the documents, the third parties obtained a protective order from the Presiding Disciplinary Judge ("PDJ"). The PDJ noted that the rules provide that the investigative stage of a disciplinary proceeding is confidential until ARC files a formal, public complaint with the PDJ. Hence, the PDJ reasoned that the subpoenaed FBI documents were also confidential, even to the attorney under investigation. The PDJ concluded that ARC erred by providing the FBI documents to Attorney E and prohibited further disclosure of the documents or their contents by either ARC or Attorney E unless either party obtained the information from an independent source or until any person filed the documents in a public proceeding. Both ARC and Attorney E petitioned this court to have the protective order vacated.

We issued a rule to show cause why the petitioners' relief should not be granted and now make the rule absolute in part and discharge it in part. We affirm the issuance of a protective order to protect the privacy interests of third parties but remand to the Presiding Disciplinary Judge with directions to modify the terms of the protective order consistent with this opinion.

## II. Facts and Proceedings Below

Because certain information in this disciplinary proceeding remains subject to a protective order, we provide only those facts which are pertinent to the resolution of this case.

ARC was investigating two matters involving Attorney E. Both matters concerned, in part, statements Attorney E made about two Colorado judges. Specifically, Attorney E asserted that the judges had engaged in criminal misconduct.

During ARC's investigation, a witness stated that the FBI had investigated and developed evidence of the judges' misconduct.[3] ARC issued investigative subpoenas to the FBI requesting any reports in that agency's records pertaining to the investigation of the judges pursuant to ARC's authority under C.R.C.P. 251.10(b)(2). Rule 251.10(b)(2) incorporates Rule 45, which in turn incorporates specific discovery provisions of Rules 26 and 30.[4] Following those rules, ARC sent a notice of its record deposition to Attorney E as the "party" to the investigative proceedings. Because Attorney E was also entitled to the documents themselves as a party to the proceedings, ARC forwarded him copies that had been redacted by the FBI.

Although Attorney E's allegations concerned both judges, the primary FBI investi-

---

3. The United States Attorney for the District of Colorado declined the case and the investigation was terminated with no further proceedings.

4. C.R.C.P. 251.10(b)(2) provides in relevant part:
 **(b) Procedures for Investigation.**
 (2) Procurement of Evidence During Investigation.
 ... In connection with an investigation of allegations made against an attorney ... the Regulation Counsel may issue subpoenas to compel ... the production of pertinent ... papers [and] documents, or other evidence in proceedings before the Investigator. *All such subpoenas shall be subject to the provisions of C.R.C.P. 45.* (emphasis added).
 C.R.C.P. 45 provides in relevant part:
 **(b) For Production of Documentary Evidence.** A subpoena may also command the person to whom it is directed to produce the books, papers, documents, or tangible things designated therein....

(c) **Service** .... The party issuing or causing the issuance of the subpoena pursuant to this rule, except in post-judgment proceedings, *shall serve a copy of the subpoena ... upon all parties of record* .... (emphasis added).
(d) **Subpoena for Taking Depositions; Place of Examination.**
(1) A Deposition subpoena, *upon notice to all parties to the action, may require the production of documentary evidence which is within the scope of discovery permitted by Rule 26.* (emphasis added).
C.R.C.P. 26 provides in part:
(a)(1) **Disclosures**.... [A] party shall, without awaiting a discovery request, *provide to other parties:*
(B) *A ... copy of ... all documents ... in the possession, custody, or control of the party that are relevant to disputed facts* .... (emphasis added).

gation centered on one of the judges. After receiving the FBI documents describing the investigation of the judge for alleged criminal misconduct, Attorney E publicly distributed the FBI documents by filing them in various courts of record. Following the public disclosure, the judges filed petitions with the PDJ under C.R.C.P. 251.31 seeking a protective order [5] classifying the FBI documents as "confidential" and limiting Attorney E's use of them.

In response to the judges' petition, the PDJ issued a protective order. In his order, the PDJ ruled that the FBI documents were "confidential" under the various subsections of 251.31.[6] The PDJ reasoned that unless and until ARC files a formal complaint, the investigations of ARC were confidential—even to the target of the investigation. Because Attorney E, as the target of the investigation, was not a "party" to the proceedings until ARC initiated the complaint process, C.R.C.P. 251.10 did not require or authorize ARC to provide Attorney E or anyone else with confidential documents obtained pursu-

ant to the subpoena. Accordingly, the PDJ prohibited not only Attorney E but also ARC from further use of the FBI documents or the information contained within the documents without an order of the court. The PDJ concluded that the protective order did not prevent any person acquiring the same information from an independent source from disclosing such information or any person from disclosing the information once it was filed in a public proceeding.

In response to the PDJ's protective order, ARC petitioned this court pursuant to C.A.R. 21 and C.R.C.P. 251.1(d) [7] to have it vacated for three reasons. First, ARC argued that the order misconstrued ARC's obligations when an investigative subpoena is issued. Second, it overextended the concept of confidentiality in Rule 251.31. Third, the order hindered ARC's investigation of Attorney E by unduly limiting the purposes to which the FBI documents may be put. Attorney E also filed a motion for leave to intervene in support of ARC's petition, arguing that the protective order violated his First Amend-

---

5. C.R.C.P. 251.31 provides:

(a) **Availability of Information.** Except as otherwise provided by these rules, *all records, except the work product, deliberations and internal communications of the Regulation Counsel, the committee, the Presiding Disciplinary Judge, the Hearing Boards, and the Supreme Court shall be available to the public after the committee determines that reasonable cause to believe grounds for discipline exists and the Regulation Counsel files and serves a complaint* . . . . (emphasis added).

Unless otherwise ordered by the Supreme Court or the Presiding Disciplinary Judge, *nothing in these rules shall prohibit the complaining witness, the attorney, or any other witness from disclosing the existence of proceedings under these rules or from disclosing any documents or correspondence served on or provided to those persons.* (emphasis added).

(b) **Confidentiality.** Before the filing and service of a complaint . . . *the proceedings are confidential within the Office of Regulation Counsel, the committee, the Presiding Disciplinary Judge, and the Supreme Court,* except that the pendency, subject matter, and status of an investigation may be disclosed by the Regulation Counsel if:

(1) The respondent has waived confidentiality;
(2) The proceeding is based upon allegations that include either the conviction of a crime or discipline imposed by a foreign jurisdiction;
(3) The proceeding is based on allegations that have become generally known to the public; or

(4) There is a need to notify another person or organization, including the fund for client protection, to protect the public, the administration of justice, or the legal profession. (emphasis added).

(e) **Protective Orders.** *To protect the interests of a complainant, witness, third party, or respondent, the Presiding Disciplinary Judge or a Hearing Board, may, upon application of any person and for good cause shown, issue a protective order prohibiting the disclosure of specific information otherwise privileged or confidential* . . . . (emphasis added).

6. The PDJ also concluded that the FBI documents were "confidential" by virtue of the federal Freedom of Information Act, 5 U.S.C. § 552 and the Federal Privacy Act, 5 U.S.C. § 552(a). Because the two judges named in the FBI documents appropriately sought a protective order under C.R.C.P. 251.31(e), we decline to analyze this Colorado disciplinary case under either the Freedom of Information Act or the Federal Privacy Act.

7. C.R.C.P. 251.1(d) states:

(d) **Plenary Power of the Supreme Court.** The Supreme Court reserves the authority to review any determination made in the course of a disciplinary proceeding and to enter any order with respect thereto, including an order directing that further proceedings be conducted as provided by these Rules.

ment right to free speech.[8]

We granted ARC's petition under C.A.R. 21 and 251.1(d) and Attorney E's motion to intervene and issued a rule to show cause why the petitioners' relief should not be granted. As a result, the protective order remained in effect but the underlying disciplinary proceedings against Attorney E were stayed pending our resolution of the issues.

We now hold that Attorney E is a "party" to ARC's investigation proceedings and as such, the protective order does not violate his First Amendment rights. As background for our discussion of these issues, we briefly review the investigation stage of the attorney regulation system.

### III. The Investigation Stage of the Attorney Regulation System

The investigation of allegations against an attorney proceeds as follows.[9] Once ARC makes the determination to investigate an attorney, it provides the attorney in question with written notice of the nature of the allegations. C.R.C.P. 251.10(a). The attorney must respond to the allegations in writing. Following the attorney's response, the case is assigned to an ARC investigator. *Id.* Once ARC initiates the investigation, the target attorney has a duty to cooperate and participate throughout the investigation. C.R.C.P. 251.5(d); *In re Weisbard,* 25 P.3d 24, 28 (Colo.2001).

ARC has broad powers to procure evidence during the investigation. *See* C.R.C.P. 251.10(b)(2). ARC may issue subpoenas to compel the attendance of witnesses, including the attorney in question, for investigative proceedings. ARC may also issue a subpoena for the production of documents (a subpoena duces tecum) to obtain pertinent books, papers, documents or any other evidence pertinent to the investigation. While ARC's investigative powers are not

subject to all of the rules of civil procedure,[10] they are subject to certain discovery rules because of the express incorporation of C.R.C.P. 45.

C.R.C.P. 45 allows, among other things, ARC to subpoena documents in the hands of a nonparty so long as it follows the formal requirements of the rule. C.R.C.P. 45(b). Those requirements mandate that the person issuing the subpoena must serve a copy of the subpoena, including a complete list of documents and things requested to be provided pursuant to the subpoena, upon all "parties of record." C.R.C.P. 45(c). Rule 45 does not permit a person to subpoena documents by themselves; rather, the items may be sought only in connection with a subpoena for a deposition.[11] 4 Sheila K. Hyatt & Stephen A. Hess, *Colorado Civil Rules Annotated* § 45.3 (3rd ed.1998). Rule 45 is also subject to Rule 26, which requires that parties receive copies of all documents that are "relevant to disputed facts" in the proceedings. C.R.C.P. 26(a)(1)(B).

Following the specific discovery rules of civil procedure found in Rules 45, 30, and 26, when ARC issues a deposition subpoena for documents, it serves a copy of the subpoena on the attorney under investigation as the "party" and provides copies of the documents. Such disclosure of documents from ARC to the attorney under investigation is consistent not only with the discovery rules but also with the confidentiality provisions of Rule 251.31, which provide that only the "proceedings" are confidential. ARC has also historically interpreted the provisions of Rule 251.10(b)(2), and its predecessor Rule 241.10, to require a similar result.

Rule 241.10 also incorporated Rule 45 and thus the discovery obligations of the disciplinary investigator have not changed. *See* C.R.C.P. 241.10. The Office of Disciplinary

---

8. Attorney E filed a Petition for Writ of Certiorari to the United States Supreme Court regarding the PDJ's protective order. The U.S. Supreme Court denied the Petition in June 2002.

9. Colorado's attorney regulation system also includes a formal complaint stage. *See* C.R.C.P. 251.12, 251.14.

10. For example, disciplinary hearings must be conducted in conformity with the Colorado Rules of Civil Procedure and the Colorado Rules of Evidence. C.R.C.P. 251.18(d).

11. Under C.R.C.P. 30, a litigant may depose a third party and compel the production of documents following the requirements of C.R.C.P. 45.

Counsel, the predecessor to ARC, always gave the attorney under investigation notice of any investigatory subpoena related to the attorney's case and copies of any documents obtained in the investigative process. The reasons for this practice were fairness and privacy. For example, ARC frequently subpoenas personal, medical, and business records from an attorney during the investigation. Such records implicate the attorney's right of privacy. *See People v. Lamb*, 732 P.2d 1216, 1220 (Colo.1987); *Benson v. People*, 703 P.2d 1274, 1280 n. 7 (Colo.1985). As a matter of long-standing procedure and practice, therefore, when ARC issues document subpoenas, it provides notice of the subpoena and copies of the documents to the attorney under investigation.

Once the attorney under investigation receives such documents, he or she may use them in various ways. For example, the attorney may review them to determine the strength of the case and whether he or she should offer a "conditional admission". C.R.C.P. 251.10(b)(4). A conditional admission occurs when ARC and the attorney under investigation agree upon a conditional admission of misconduct in lieu of a formal complaint when the form of discipline is no greater than a private admonition. *Id.* Such admissions promote one of the goals of the attorney discipline system: the speedy and informal resolution of minor misconduct.[12]

The accused attorney may also disseminate the documents and the information contained within the documents to the public according to the provisions of Rule 251.31(a) and (b). Under Rule 251.31(b), the confidentiality provisions apply only to the "proceedings." There is no separate confidentiality provision for investigation documents.

The second paragraph of Rule 251.31(a) explicitly allows the attorney under investigation, the complaining witness, and any other witness to the investigative proceedings to disclose the existence of disciplinary proceedings or to disclose any documents or correspondence served on or provided to these persons. C.R.C.P. 251.31(a). Thus, the disciplinary rules explicitly allow the participants in the investigation—the accused attorney, the complaining witness, and any other witness—to disclose the existence of the investigative proceedings and documents before ARC files a formal, public complaint against the accused attorney.[13]

The ability of the accused attorney to disclose documents received from ARC is consistent with the goals of the revised attorney discipline system. Before the enactment of our current rules, the accused attorney could not disclose such documents or the existence of grievance proceedings unless permitted to do so by this court.[14] One of the major goals of the amendments was to make the system of attorney discipline more publicly visible.[15]

**12.** This court substantially reorganized and revised the attorney discipline system rules in 1999. One of the important changes was to provide alternatives to discipline to permit the diversion of certain cases of minor misconduct so as to avoid formal complaint proceedings. *See* C.R.C.P. 251.13.

**13.** There is no such public disclosure provision for ARC. However, before the filing of a complaint, ARC may disclose the pendency, subject matter, and status of an investigation to the public in four situations:
(1) The respondent [attorney under investigation] has waived confidentiality;
(2) The proceeding is based upon allegations that include either the conviction of a crime or discipline imposed by a foreign jurisdiction;
(3) The proceeding is based on allegations that have become generally known to the public; or
(4) There is a need to notify another person or organization, including the fund for client

protection, to protect the public, the administration of justice, or the legal profession. C.R.C.P. 251.31(b).

**14.** Prior to 1999, it was a disciplinary offense for an attorney to disclose pending grievance proceedings in the absence of an order granting such disclosure. C.R.C.P. 241.24 (1998); *People v. Bottinelli*, 782 P.2d 746, 751 (Colo.1989) (discussing confidentiality provisions of C.R.C.P. 241.24).

**15.** The Attorney Regulation System Planning Committee, evaluating changes to the disciplinary rules, reported to this court that the system of attorney discipline in Colorado must meet the major goal of providing a fair, efficient, and visible process to resolve complaints charging attorneys with misconduct. *See 1997 Report of the Colorado Attorney Regulation System Planning Committee*, Public Hearing, February 23, 1998, 27 Colo. Lawyer 2, 23 (Feb.1998).

Thus, the "confidentiality" provisions of the old system were greatly reduced by the new discipline system. The ability of the accused attorneys and witnesses to the investigative proceedings to disclose information if they choose reflects this goal of visibility.

The ability of the accused attorney, the complaining witness, or any other witness to disclose information or documents received from ARC during an investigation, however, is not unlimited. To protect the interests of a complainant, witness, third party, or the accused attorney, any person may petition the PDJ for a protective order upon a showing of good cause. C.R.C.P. 251.31(e). Such orders prohibit the disclosure of information otherwise privileged or confidential and direct that the proceedings be conducted so as to implement the order. *Id.* Rule 251.31(e) is consistent with the power of the court to issue a protective order under C.R.C.P. 26(c), which precludes dissemination of discovery information, upon good cause shown, to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.

Having reviewed the attorney discipline rules and their incorporation of the discovery rules of civil procedure during the investigation stage, we turn to the application of these rules to this case.

## IV. The Attorney Regulation System Authorized and Required Attorney Regulation Counsel to Provide Attorney E with Notice of the Investigative Subpoena and the Subpoena Documents Because Attorney E Is a Party to the Proceeding

■ Initially, we must determine whether Attorney E is a "party" to the investigative proceedings and thus entitled, as required by the specific discovery provisions of the rules of civil procedure, to notice of its subpoenas and the subpoenaed documents themselves. The PDJ's protective order concludes that he is not a party. The PDJ reasoned that ARC's subpoena for the FBI documents was issued under ARC's investigation powers pursuant to Rule 251.10. Under the confidentiality provisions of Rule 251.31, any documents obtained during an investigation are confidential, even from the attorney under investigation. Thus, even though Rule 251.10 refers specifically to C.R.C.P. 45— which provides the discovery requirements and obligations for parties—the PDJ concluded that the investigative confidentiality rule supercedes the disclosure requirements of Rule 45 and the related discovery provisions.

We disagree. The PDJ's interpretation would render many of the disciplinary rules meaningless and prevent the accused attorney from participating fully in his or her investigation—contrary to the mandates and intent of our attorney regulation system. *People v. Cooper*, 27 P.3d 348, 354 (Colo. 2001) ("Our fundamental responsibility in interpreting a statute is to give effect to [its] purpose or intent. . . ."). Thus, we hold that Attorney E is a party to the investigative proceedings.

The rules authorize and require the actions ARC took in its investigation of Attorney E. Pursuant to its broad investigative powers under Rule 251.10(b)(2), ARC subpoenaed the documents describing the FBI's investigation. ARC reasonably believed that such documents would shed light on its investigation of Attorney E's accusations. Rule 251.10(b)(2) is subject to the discovery requirements of Rule 45, and thus ARC had no choice but to follow the specific provisions of Rule 45.

Rule 45 mandates that persons serving subpoenas must provide notice of such subpoenas to all "parties" and incorporates the discovery provisions of Rule 26(a)(1)(B). Rule 26(a)(1)(B) requires that parties receive copies of all relevant documents. Thus, ARC provided Attorney E with notice of its deposition subpoena to the FBI and the documents produced as a result of that subpoena.

If the attorney under investigation is not entitled to notice and the documents, then the explicit incorporation of Rule 45 into Rule 210.10 becomes meaningless. *See Colorado Common Cause v. Coffman*, —— P.3d ——, ——, 2003 WL 1562241 at *5 (Colo. App. March 27, 2003). *See also State v. Nieto*, 993 P.2d 493, 501 (Colo.2000).

Other provisions of the disciplinary rules are similarly superfluous if Attorney E is not entitled to the subpoena documents. For instance, the power of the attorney under investigation to disclose investigative documents to the public pursuant to Rule 251.31(a) would be moot if ARC were precluded from providing those documents to the attorney in the first place. Such a result would be contrary to one of the main goals of the recent revisions of the rules: to allow liberal disclosures of information so as to provide a visible attorney discipline process.

The duty of the attorney to participate in his or her own investigation is also hindered significantly if the attorney does not have access to relevant documents until the investigation is completed and ARC files a formal complaint. To cooperate and participate in the investigative process, a respondent attorney must have meaningful access to the investigative documents and the evidence that form the substance of the investigation. Without an exchange of investigative information between ARC and the attorney under investigation, the attorney is not likely to pursue an informal resolution of the case or agree to a conditional admission. Without all of that information, the attorney would not be able to make informed decisions about any admissions. In addition, the attorney would be hindered in presenting arguments and evidence to the ARC investigator that the allegations against him or her were meritless or constituted a minor violation of the rules. The result would be to force matters into the formal proceeding stage when early sharing of information otherwise might result in early resolution at a lesser expense to both parties. Such a result would conflict with one of the goals of the system: an efficient, speedy, and fair resolution of minor misconduct.

Given the plain language of the rules, ARC's present and historic interpretation of those rules, and the implications of a con-

trary interpretation that would render other rules in our attorney discipline system moot and create a secretive system that discourages informal resolution of discipline claims, we conclude that Attorney E was a "party" in his own investigation.[16] Thus, ARC appropriately followed the specific provisions of Rules 45, 26(a)(1)(B), and 30 by providing the attorney with notice of its subpoena and the documents produced from that subpoena.

## V. The Protective Order

■ Having determined that Attorney E is a party in his own investigation and thus entitled to copies of the FBI documents, we address the terms and provisions of the protective order. Unquestionably, apart from the "confidentiality provisions" of Rule 251.31(a) and (b), the PDJ has the power to issue an order limiting the dissemination of information to protect the interests of third parties for good cause shown. C.R.C.P. 251.31(e). *See also* C.R.C.P. 26(c).

■ Pursuant to C.R.C.P. 251.31(e), the PDJ held that "good cause" was shown in this case for the issuance of a protective order. The PDJ reasoned that Attorney E's continued dissemination of documents describing the investigation of the judges' alleged misconduct posed a significant and substantial risk to the continued privacy of the two judges, other persons named in the documents, and the judicial system. The PDJ concluded that such a risk to privacy interests was compelling here because the United States Attorney had declined to file charges in response to the FBI investigation.

Neither ARC nor Attorney E appealed the PDJ's "good cause" ruling pursuant to 251.31(e) and thus did not in that context provide any record of what the FBI documents contained so we could independently evaluate them. Thus, we must assume for purposes of this case that the "good cause"

16. Although we conclude that the respondent attorney, Attorney E, is a "party" to the investigative proceedings and thus entitled to notice and copies of any subpoenaed documents under the specific provisions of Rules 45, 26, and 30, we do not imply that our rules empower the respondent attorney with the formal discovery powers of a party under the rules of civil procedure during the investigation stage. While Rule 210.10 grants ARC specific investigative powers that must comply with the discovery rules, there exists no similar provision for the accused attorney during the investigation phase.

standard of C.R.C.P. 251.31(e) was satisfied and a protective order was appropriate.

We focus, therefore, on the breadth of the protective order and the specific questions presented by Attorney E and ARC: (1) Whether the order violates Attorney E's First Amendment rights because it is a prior restraint on his speech? and, (2) Whether the order unduly prohibits ARC and Attorney E from prosecuting and defending, respectively, their cases? We turn to a discussion of each issue.

## A. Protective Order Does Not Violate Attorney E's First Amendment Rights

Attorney E argues that he is not a party to the investigative proceedings and thus did not receive the documents as a result of discovery. Because he is not a party in the investigative proceedings, he concludes that the order constitutes an ongoing unconstitutional prior restraint on his speech. In the alternative, Attorney E argues that even if he were a party to the investigation, the protective order placed restrictions on information after it was released to the public and such *ex post facto* prior restraints are unconstitutional. We disagree.

■■■ Prior restraints on speech are the most serious and least tolerable infringement on First Amendment rights. *Nebraska Press Assn. v. Stuart*, 427 U.S. 539, 559, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976). As the Supreme Court has frequently held, there is a heavy presumption against the constitutional validity of any prior restraint. *New York Times Co. v. United States*, 403 U.S. 713, 714, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971). A court order that prevents speech from occurring could comprise such a prior restraint. *Near v. Minnesota*, 283 U.S. 697, 713, 51 S.Ct. 625, 75 L.Ed. 1357 (1931).

■■■ However, an order prohibiting *parties* to a case from disseminating discovered information before it is revealed at a public proceeding is not the kind of "classic prior restraint" that triggers exacting First

Amendment scrutiny. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984); *Bowlen v. District Court*, 733 P.2d 1179, 1182–83 (Colo.1987). As the Supreme Court held in *Seattle Times*, such parties do not have an unrestrained right to disseminate information that they obtained only through the processes of our liberal discovery system. *Seattle Times*, 467 U.S. at 31, 104 S.Ct. 2199.

In *Seattle Times*, the defendant newspaper wanted to publish financial information it obtained through discovery about the plaintiff, a religious organization. The plaintiff obtained a protective order under the "good cause" standard of Rule 26 under the Washington Rules of Civil Procedure [17] because it alleged that publishing such information would adversely affect their membership and subject them to harassment. *Id.* at 22–27, 104 S.Ct. 2199. The United States Supreme Court unanimously upheld the protective order and rejected the defendant's First Amendment challenge.

As background to its unanimous ruling, the Court described our liberal process of discovery and the interplay between pre-trial protective orders and the First Amendment. The Court explained that discovery rules often allow extensive intrusion into the affairs of both litigants and third parties. For example, as in this case, a litigant can compel a third party to be deposed and to produce tangible evidence. *Id.* at 30, 104 S.Ct. 2199.

Such discovered information would rarely fall within the classes of unprotected speech. However, even if there is some public interest in knowing about the information, it does not necessarily follow that a litigant has an unrestrained right to disseminate information that has been obtained through pretrial discovery. *Id.* at 31, 104 S.Ct. 2199.

The Court reasoned that because discovery rules were adopted by the state legislature, the processes therein are a matter of "legislative grace." *Id.* at 32, 104 S.Ct. 2199. A party has no First Amendment right to access information made available only for

---

17. Wash. C.R. 26(c) is nearly identical to C.R.C.P. 26(c) and requires the same "good

cause" showing as does C.R.C.P. 251.31(e).

purposes of trying his or her case. Thus, "continued court control" over the discovered information in the form of protective orders does not raise the "same specter of government censorship that such control might suggest in other situations." *Id.*

To reflect the reduced level of First Amendment scrutiny applicable to protective orders that limit the dissemination of discovery information, the Court announced a two-part balancing test that weighs the free speech right of litigants against the governmental interest of prohibiting the dissemination of discovery material. The test considers whether the practice in question furthers an important or substantial governmental interest unrelated to the suppression of speech and whether the limitation of First Amendment freedoms is no greater than necessary and essential to the protection of the particular governmental interest involved. *Id.*

Applying this test, the Supreme Court upheld the protective order at issue because it satisfied the "good cause" requirements of Rule 26.

First, the Court held that Rule 26(c) furthers a substantial governmental interest unrelated to the suppression of speech. *Id.* at 34. Because of the full disclosure provisions of the rules, it is necessary for the trial court to have authority to issue protective orders. Pretrial discovery has a significant potential for abuse, particularly because it may seriously implicate the privacy interests of third parties. Although Rule 26(c) contains no specific reference to "privacy," the Court explained that privacy interests are implicit in the broad purpose and language of the Rule. *Id.* at 35 n. 21, 104 S.Ct. 2199. Thus, the government has a substantial interest in preventing abuse of its discovery process under Rule 26 to protect such privacy interests. *Id.* at 34–35, 104 S.Ct. 2199.

Second, the Court held that the protective order issued pursuant to Rule 26(c) did not limit First Amendment freedoms of the parties to a greater extent than necessary, and that they were essential to the government's interest in the protection of privacy. The order in the case prevented a party from disseminating only information obtained through the discovery process. If the party obtained the same information independently of the court's processes, the order did not preclude the party from disseminating such information. *Id.* at 34, 36, 104 S.Ct. 2199. The Court concluded that because the protective order at issue was entered on a showing of good cause under Rule 26, was limited to the context of pretrial discovery, and did not restrict the dissemination of the information if gained from other sources, it did not offend the First Amendment. *Id.* at 37, 104 S.Ct. 2199.

We applied the *Seattle Times* analysis in *Bowlen.* 733 P.2d at 1182. In *Bowlen,* we reviewed a protective order issued by a lower court under the "good cause" standard of C.R.C.P. 26(c). Because the United States Supreme Court held in *Seattle Times* that the "good cause" showing required under Rule 26 was sufficient to safeguard whatever rights the public possesses in discovery materials, we found it unnecessary to address the extent to which discovery proceedings may implicate the First Amendment. *Id.* We concluded that even if a matter is of public interest, rather than a private affair between litigants, C.R.C.P. 26(c) and *Seattle Times* permit the trial court to protect private affairs from public disclosure until the material is admitted in a public proceeding. *Id.* at 1183.

■ Following the analysis of *Seattle Times* and *Bowlen,* we conclude that the protective order issued in this case pursuant to C.R.C.P. 251.31(e) for "good cause" shown does not offend the First Amendment. Although there may be a legitimate public interest in an FBI investigation of two judges because of their positions as governmental officials, we hold that the two-part balancing test weighs in favor of the protective order.

■ First, Rule 251.31(e) furthers a substantial governmental interest unrelated to the suppression of speech. Because of the specific disclosure rules that are incorporated into our attorney discipline system, the PDJ must and does have authority to issue orders that protect third-party privacy interests. *Seattle Times,* 467 U.S. at 34–35, 104 S.Ct. 2199; *Bowlen,* 733 P.2d at 1183. In this case, the FBI documents obtained by Attor-

ney E solely as a result of the discovery process implicate the type of privacy interests inherent in the broad purpose and language of the Rule. The documents described the FBI's investigation. Such documents clearly implicate the judges' privacy interests and have a significant potential for abuse, particularly in this case where Attorney E is under investigation himself for statements he made against the judges. Thus, the government has substantial interests in preventing Attorney E from further abusing the discovery processes and in protecting the judges' privacy.

Second, the PDJ's protective order did not limit Attorney E's First Amendment freedoms to an extent greater than necessary to protect the judges' privacy interests. The order in the case prevented Attorney E—as a party to the investigative proceedings—from disseminating information obtained from the FBI documents only during ARC's pre-complaint stage. *Seattle Times,* 467 U.S. at 36, 104 S.Ct. 2199. If he obtained the same information outside of his attorney discipline case, the PDJ's order does not preclude him from disseminating such information. *Id.* at 37, 104 S.Ct. 2199. Thus, we conclude that under both the two-pronged balancing test of *Seattle Times* and the "good cause" showing required under Rule 251.31(e), the protective order in this case does not violate Attorney E's First Amendment rights. *Bowlen,* 733 P.2d at 1183.

 We are also not persuaded by Attorney E's *ex post facto* argument that his First Amendment rights are offended because, even if he is a party to the investigative proceedings and received the FBI documents as a result of discovery, he originally obtained the documents without the restrictions of the protective order.

 As the United States Supreme Court held in *Seattle Times,* a trial court has the power of "continued control" over discovered information and such control does not raise the "same specter of government censorship that such control might suggest in

other situations." 467 U.S. at 32, 104 S.Ct. 2199. Such continued control necessarily implies that protective orders may be issued at any time during the discovery process. The trial court is in the best position to weigh fairly the competing needs of litigants and third parties affected by discovery and thus must have substantial latitude to fashion protective orders when the need arises. *Seattle Times,* 467 U.S. at 36, 104 S.Ct. 2199.

The PDJ may exercise "continued control" and broad discretion over the discovery process and limit Attorney E's use of the FBI documents after he disseminated them. Attorney E received the FBI documents due to the "legislative grace" of the state's discovery provisions. Hence, the state, through the PDJ, may prevent abuse of its discovery process at any point that good cause is shown. Arguably, because of the privacy interests implicated by the FBI documents, ARC should have moved for a protective order prior to its disclosure of the documents to Attorney E.[18] Although ARC failed to take such steps, we find that good cause still exists to prevent Attorney E, as a party to the investigative proceedings, from further disclosure of the FBI documents.

Indeed, the primary case cited by Attorney E in support of his *ex post facto* argument, *Procter and Gamble Co. v. McGraw–Hill Co.,* 78 F.3d 219 (6th Cir.1996), does not apply here. *Procter* presents the classic prior restraint issue that requires exacting First Amendment scrutiny: whether a court can subject the press, not a party to the litigation, to a prior restraint on publication of discovery material that it lawfully received. *Id.* at 221. As the Sixth Circuit explained in striking down the lower court's protective order, such a prohibitive practice is contrary to the First Amendment's guarantee of freedom of the press and is always unconstitutional absent exceptional circumstances. *Id.* at 225.

Such is not the case here. Although Attorney E "lawfully received" the discovery information unrestricted, he is a party to the

---

18. ARC stated that Attorney E gave no warning that he planned to disseminate the FBI documents. Given the nature of the FBI documents and Attorney E's past statements about both

judges, ARC could have petitioned the PDJ for a protective order to protect the interest of the judges as "third parties" under C.R.C.P. 251.31(e).

investigative proceedings and thus information he received only through the process of discovery in such proceedings may be properly restricted upon a showing of good cause. C.R.C.P. 251.31(e).

Thus, based upon *Seattle Times* and *Bowlen*, we conclude that the protective order in this case does not violate Attorney E's First Amendment rights.

### B. The Protective Order Must be Modified Because it Unduly Hinders both ARC and Attorney E's Ability to Further Their Respective Cases

■ Having addressed the First Amendment issue, we turn to the practical effects of the protective order on the underlying investigation of Attorney E. ARC argues that if the protective order is allowed to stand, it will not be able to use any of the statements made in the FBI documents, or the documents themselves, to question witnesses, or otherwise as a basis for further investigation without further order from the PDJ. Attorney E argues that the protective order precludes him from interviewing or investigating sources of potentially exculpatory evidence without running the risk of being held in contempt for violating the order. We agree with both ARC and Attorney E.

■ Both parties to these investigative proceedings—ARC and Attorney E—must be able to use the documents in a limited way to prosecute and defend their respective

cases even though there exists good cause to protect the pertinent privacy interests.[19] Otherwise, subpoenaed information about the FBI's investigation, clearly relevant to the inquiry into Attorney E's accusations, has no purpose. Consequently, ARC's investigation of Attorney E is unduly hampered because even if it can subpoena certain information, it cannot use it. C.R.C.P. 251.10(b)(2). Attorney E, on the other hand, cannot effectively defend his case and participate fully in the investigation, as is his responsibility under the rules. C.R.C.P. 251.5(d). Given the implications of a protective order that prevents both parties from making any use of relevant documents, we conclude that the PDJ must modify the protective order to allow the limited use of the FBI documents by both parties.[20] However, considering the privacy interests of the two judges named in the documents and consistent with the PDJ's oral comments, the parties should not disclose the existence of the documents themselves or inform witnesses that the information comes from FBI documents. To the extent that either party finds it necessary and essential to their respective cases to disclose to witnesses that certain information comes from the confidential documents, they may apply to the PDJ for a modification of the protective order to permit such disclosure. Whether such disclosure is necessary depends upon specific facts presented to the PDJ. By allowing limited use of the documents as needed by the circumstances of this

19. We note that in the absence of a protective order, our rules allow the accused attorney to disclose any documents he or she receives during the investigative proceedings. On the other hand, ARC may not publicly disclose such documents unless one of the circumstances listed in Rule 251.31(b) exists. *See supra*, note 13. ARC may disclose information, documents and correspondence which are not the subject of a protective order as necessary to investigate allegations against the accused attorney.

20. Arguably, the protective order can be read to permit broader use of the documents than either party argues. This interpretation is buttressed by the PDJ's oral comments at the conclusion of the hearing on the protective order:

[Attorney E's Counsel]: Your Honor, at least partly this would lie—would be a question to Regulatory [sic] Counsel, but I take it, your order as you presently have it in mind would prevent Attorney E from talking to any of the

individuals identified in the FBI reports to determine the truth or falsity of the allegations made.

[PDJ]: If the source of the identity of those individuals is solely from these documents, *I don't think it would preclude [Attorney E] from talking with them, but it would preclude [Attorney E] from disclosing the information within the documents.*

[Attorney E's Counsel]: Well, if the information within the document is that ... you were involved in a car-theft ring, is that true of false? He can't do that....

[PDJ]: You can ask the question different ways. Your example, the question could be asked, Are you involved in a car ring? That doesn't disclose any information from the document. But to say, Look, I have these FBI documents in which its alleged that you're in a car ring, are you? That discloses information.

case, the protective order appropriately will balance the privacy interests of third parties named in the documents with the investigative purposes of our attorney regulation system.

### VI. Conclusion

The rule is made absolute in part and discharged in part, and the case is remanded to the Presiding Disciplinary Judge with directions to modify the protective order consistent with this opinion.

Chief Justice MULLARKEY and Justice BENDER did not participate.